**Gerald JACOBS d/b/a Boston Tea Company, Appellant,**

v.

**INTERNATIONAL MULTIFOODS CORPORATION, Appellee.**

**Appeal No. 81–580.**

United States Court of Customs and Patent Appeals.

Jan. 21, 1982.

Paul Fields, New York City, for appellant.

Alan G. Carlson, Douglas A. Strawbridge, and Steven A. Wells, Minneapolis, Minn., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board (board), 211 USPQ 165 (TTAB 1981), dismissing appellant's opposition No. 58,388, filed June 7, 1977, to registration by appellee of the service marks BOSTON SEA PARTY and BOSTON SEA PARTY with design on the principal register, application serial Nos. 62,729 and 71,871 filed September 11, 1975, and December 15, 1975, respectively, alleging a likelihood of confusion from use of those marks and appellant's mark BOSTON TEA PARTY, registered February 12, 1963, for tea. We affirm.

*Background*

The background which illuminates appellant's allegation that there exists a likelihood of confusion, mistake, or deception between BOSTON TEA PARTY as applied to tea and appellee's BOSTON SEA PARTY marks used in conjunction with restaurant services is set forth in the opinion below and will not be repeated here. The BOSTON SEA PARTY mark with design is reproduced at 211 USPQ 166. It consists of the word mark plus "A Dining Revolution" superposed on a ship's wheel. Familiarity with the facts and the arguments below as summarized by the board is assumed.

OPINION

History teaches that in response to passage of the Declaratory Act by the British Parliament, three ships loaded with tea, moored at Griffin's wharf in Boston harbor, were boarded on December 16, 1773, by indignant colonists protesting the tax on tea who threw all three cargoes into the water. This episode, commonly designated the "Boston Tea Party," is a well-known event, the fame and recognition of which bear upon appellant's asserted right to prevent appellee from registering similar marks.

In *In re General Electric Co.*, 49 CCPA 1186, 304 F.2d 688, 134 USPQ 190 (1962), this court reviewed a decision of the board sustaining a refusal to register the mark VULKENE for electrical wires and cables in view of the previous registration of VULCAN for electrical building wires on the ground that there existed a likelihood of confusion. In reversing that decision, the court noted that VULCAN is a common term: "Anyone confronted with it * * * would recognize it as something already known—it would not impress itself on his consciousness as anything new or strange,

but rather as something familiar." *Id.* at 1189, 304 F.2d at 690, 134 USPQ at 192. It was thus concluded that no confusion was likely because VULKENE was *not* a common term, but a coined one, and " 'the human mind has little difficulty differentiating between the familiar and the unfamiliar'." *Id.*

Similarly, we here consider as marks a commonly known term, BOSTON TEA PARTY, and an uncommon term, BOSTON SEA PARTY. Although appellant argues that there exist similarities in sight, sound, and meaning (which are self-evident), and that appellee admits that its term is a play on "Boston Tea Party," we remain convinced that "the familiar is readily distinguishable from the unfamiliar." *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.,* 505 F.2d 719, 721, 184 USPQ 34, 35 (CCPA 1974). This distinction between common and uncommon *terms* as *marks* has been previously discussed. *Id.* (Duet v. Duvet); *In re Ferrero,* 479 F.2d 1395, 1397, 178 USPQ 167, 168 (CCPA 1973) (Tic Tac Toe v. Tic Tac); *Dan River Mills, Inc. v. Yorke Shirt Co.,* 55 CCPA 867, 868, 390 F.2d 734, 735, 156 USPQ 401, 402 (1968) (Dante v. Dandeen, Dantone, Dantuff, Dantweed, Dantwill); *Vornado, Inc. v. Breuer Electric Mfg. Co.,* 55 CCPA 858, 862–63, 390 F.2d 724, 727–28, 156 USPQ 340, 343 (1968) (Rich, J., dissenting, and Smith, J., dissenting) (Tornado v. Vornado); *Alfred Electronics v. Alford Mfg. Co.,* 51 CCPA 1533, 1540, 333 F.2d 912, 919, 142 USPQ 168, 173 (1964) (Alfred v. Alford) (Rich, J. and Smith, J., dissenting); *In re General Electric Co.,* supra; *Lever Brothers Co. v. Producers Chemical Service,* 48 CCPA 744, 746, 283 F.2d 879, 880, 128 USPQ 7, 8 (1960) (Shux v. Lux).

■ It has been correctly stated that "The fact that one mark may bring another to mind does not in itself establish likelihood of confusion as to source." *In re Ferrero,* supra. Additionally, the fact that

a *mark* may bring to mind another *term,* and not another *mark,* is further support for the conclusion that no confusion is likely. Thus, if observation of BOSTON SEA PARTY brings to mind the Boston Tea Party, we cannot conclude, in light of its notoriety and without convincing evidence of the extent to which appellant's mark is known, that one would equate that term with appellant rather than with the historical incident.

Appellant's argument with respect to the relationship between foods and food services parallels that made by the opposer/appellant in *Interstate Brands Corp. v. Celestial Seasonings, Inc.,* 576 F.2d 926, 198 USPQ 151 (CCPA 1978), seeking to bar registration of ZINGERS for cakes based on prior use and registration of RED ZINGER for herb tea. This court stated:

> Interstate's major substantive contention is that case law has established a rule whereby confusion is to be found likely whenever food items are sold under the same or similar marks. There is no such "rule." On the contrary, "[e]ach case must be decided on its own facts and the differences are often subtle ones." *Industrial Nucleonics Corp. v. Hinde,* 475 F.2d 1197, 1199, 177 USPQ 386, 387 (CCPA 1973). [576 F.2d at 927, 198 USPQ at 152.]

To establish likelihood of confusion a party must show something more than that similar or even identical marks are used for food products and for restaurant services.*

■ Further, we are not here concerned with *two* arbitrary *marks.* Appellee's BOSTON SEA PARTY marks are entirely arbitrary as used to identify *restaurant services* while BOSTON TEA PARTY cannot be so classified as applied to *tea.* Given this disparity in degree of inherent distinctiveness of the *marks,* the readily perceived differences between the *terms* (as discussed above), and the differences in the activities

* *Compare James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 192 USPQ 555 (7th Cir. 1976), *and Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637, 158 USPQ 562 (5th Cir. 1968), where the owner of BEEFEATER for gin, a *well known* and *famous* mark, was successful in halting the use of BEEFEATER and SIGN OF THE BEEFEATER to identify restaurant services.

of the parties involving their uses of the *marks*, we hold that the board was correct in determining that there is no likelihood that use of appellee's marks will cause confusion, mistake, or deception.

The decision of the board is *affirmed.*

AFFIRMED.

NIES, Judge, concurring.

I agree with the majority that confusion has not been shown to be likely between the respective uses of the parties. My departure from the analysis of the majority is because of its reliance on the difference in meaning between the marks, one being a "common term" and one not. The "uncommonness" of appellee's mark will only be apparent to those who perceive an actual difference from the mark of appellant. Were the marks here both applied to tea sold in the distracting environment of the supermarket, the harried shopper might well mistake one for the other because of striking similarity in sound and appearance. I do agree, however, that the difference in the marks is more likely to be noted when the respective uses are for restaurant services and tea.

I also agree that the derivation of the marks from the name of an historic event is a factor to be given consideration. In my view, however, it does not indicate "weakness" or "descriptiveness" of appellant's mark but does give credence to appellee's assertion that there was no intent to trade upon the goodwill of appellant. The absence of intent to confuse would not preclude a finding of likelihood of confusion, but had such intent been shown (which it has not), it would be a factor to weigh against the newcomer. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263, 205 USPQ 969, 978 (CA 5), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).