Hearing:                                    Paper No. 16
December 4, 1997                             JQ

THIS DISPOSITION IS CITABLE AS
PRECEDENT OF THE TTAB            JAN. 29, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Azteca Restaurant Enterprises, Inc.
_____

Serial No. 74/666,488
_____

KiSong Kim Lang-Caditz of Christensen, O'Connor, Johnson &
Kindness for applicant.

Anthony R. Masiello, Trademark Examining Attorney, Law
Office 104 (Sidney Moskowitz, Managing Attorney).
_____

Before Hanak, Quinn and Walters, Administrative Trademark
Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Azteca Restaurant

Enterprises, Inc. to register the mark AZTECA MEXICAN

RESTAURANT in typed form for "restaurant services."[1]

The Trademark Examining Attorney has refused

registration under Section 2(d) of the Act on the ground

_____

[1] Application Serial No. 74/666,488, filed April 26, 1995,
alleging dates of first use of December 7, 1977.  The words
"Mexican Restaurant" are disclaimed apart from the mark.  The

that applicant's mark, when applied to applicant's services, so resembles the following previously registered marks, all owned by the same entity, as to be likely to cause confusion: AZTECA in typed form for "partially prepared Mexican foods, namely tortillas";[2] the mark shown below

for "flour taco shells, flour tortillas, corn tortillas, chunky salsa"[3] and "all-purpose flour-based tortilla";[4] and the mark shown below

for "tortillas."[5]

Applicant and the Examining Attorney have filed briefs and both appeared at an oral hearing.

---

application includes the statement that "'Azteca' is translated as the noun or adjective Aztec."

[2] Registration No. 956,581, issued April 3, 1973; renewed.

[3] Registration No. 1,445,441, issued June 30, 1987; combined Sections 8 and 15 affidavit filed.

[4] Registration No. 1,788,335, issued August 17, 1993.

[5] Registration No. 1,792,819, issued September 14, 1993. The word "Foods" is disclaimed apart from the mark. The drawing is lined for the colors yellow, green, red and blue.

2

Applicant contends that there is no *per se* rule in likelihood of confusion cases where similar marks are used in connection with restaurants and food products, pointing to prior published decisions with findings of no likelihood of confusion. Applicant also asserts that its mark is "nationally recognized and well known," yet applicant, according to its attorney, is unaware of any instances of actual confusion with registrant's marks despite approximately twenty years of contemporaneous use. In support of its position, applicant submitted excerpts retrieved from the NEXIS database which, according to applicant, "reflect acknowledgment and recognition in nationally distributed magazines and newsletters of the goodwill associated with applicant's service mark." Applicant also submitted a dictionary listing for the word "Aztec": "a member of an Indian people of Central Mexico, noted for their advanced civilization before Cortes invaded Mexico in 1519; also aztecan; of the Aztecs, their language, culture, or empire." Applicant further introduced three third-party applications and two third-party registrations (one of which stands canceled) of AZTECA marks for food and beverage items.

The Examining Attorney maintains that the refusal is proper, pointing to the essential identity of the marks and

the relationship between registrant's Mexican food products and applicant's Mexican restaurant services. The Examining Attorney asserts that registrant's goods are the type of food items that are served in applicant's restaurants, and that food products and restaurant services are commonly marketed by a single entity under a single mark. In connection with the refusal to register, the Examining Attorney submitted ten third-party registrations showing that, in each instance, a single entity registered the same mark for both restaurant services and food products, and dictionary listings for the terms "salsa," "taco" and "tortilla."[6]

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services.

We recognize, at the outset, that there is no *per se* rule which mandates a finding that confusion is likely

---

[6] The dictionary evidence, which accompanied the appeal brief, is proper subject matter for judicial notice. University of Notre

whenever foods and restaurant services are sold under similar marks. See, e.g.: Jacobs v. International Multifoods Corp., 668 F.2d 1234, 212 USPQ 641 (CCPA 1982) [no likelihood of confusion between BOSTON TEA PARTY for tea and BOSTON SEA PARTY for restaurant services; "a party must show something more than that similar or even identical marks are used for food products and for restaurant services"]; and In re Central Soya Company, Inc., 220 USPQ 914 (TTAB 1984) [no likelihood of confusion between POSADA (stylized) for Mexican style prepared frozen enchiladas and LA POSADA for lodging and restaurant services]. In the case now before us, we have applied no *per se* rule, but rather have decided this case on its own facts, examining the parties' particular marks and particular goods and services.

Turning first to consideration of the respective goods and services, it is well settled that they need not be identical or even competitive in nature in order to support a finding of likelihood of confusion. Instead, it is sufficient that the goods and services are related in some manner and/or that the circumstances surrounding their marketing are such that they would be likely to be

---

Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

encountered by the same persons under situations that would give rise, because of the marks employed in connection therewith, to the mistaken belief that they originate from or are in some way associated with the same producer or provider.  See, e.g., Monsanto Co. v. Enviro-Chem Corp., 199 USPQ 590, 595-96 (TTAB 1978); and In re International Telephone & Telegraph Corp., 197 USPQ 910, 911 (TTAB 1978).

The Examining Attorney, in support of his contention that applicant's Mexican restaurant services are related to registrant's Mexican food items, submitted dictionary definitions of the three food items listed in registrant's registrations.  Each one, "salsa," "taco" and "tortilla" is defined in terms of "Mexican cookery."  The Examining Attorney also introduced ten use-based third-party registrations of marks which, in each instance, are registered for restaurant services, on the one hand, and food items, on the other.  Five of the registrations cover both restaurant services and Mexican food items.  Although these ten registrations are not evidence that the different marks shown therein are in use or that the public is familiar with them, they nevertheless have some probative value to the extent that they serve to suggest that the goods and services listed therein (which are the same types of goods and services involved here) are of a kind which

may emanate from a single source. See, e.g., In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785-86 (TTAB 1993); and In re Mucky Duck Mustard Co. Inc., 6 USPQ2d 1467, 1470 at n. 6 (TTAB 1988).

Applicant's mark itself makes it clear that its restaurant serves Mexican food, and a review of applicant's menu shows that applicant serves a variety of Mexican fare, including tacos, tortillas and salsa (that is, the very items listed in the cited registrations). In addition, in the "TO-GO" section on the last page of its menu, applicant lists tortillas as well as a "Jar of Azteca Hot Sauce." Thus, at least with respect to the hot sauce, applicant already is marketing for retail sale a food product under the mark AZTECA.

In view of the above, we concur with the Examining Attorney's assessment that the respective goods and services are related. Contrary to applicant's arguments, we find that the record here satisfies the "something more" evidentiary language articulated by our primary reviewing court in Jacobs v. International Multifoods Corp., supra at 642. As the evidence in the present case indicates, Mexican food items are often principal items or entrees served by restaurants, certainly by Mexican restaurants. The average consumer, therefore, would be likely to view

Mexican food items and Mexican restaurant services as emanating from or sponsored by the same source if such goods and services are sold under the same or substantially similar marks. See: In re Golden Griddle Pancake House Ltd., 17 USPQ2d 1074 (TTAB 1990) [GOLDEN GRIDDLE PANCAKE HOUSE (PANCAKE HOUSE disclaimed) for restaurant services and GOLDEN GRIDDLE for table syrup is likely to cause confusion; undeniable connection between pancake syrup and a restaurant that serves pancakes and syrup, especially since "restaurants frequently package certain of their products for retail sale"]; and Roush Bakery Products Co., Inc. v. Ridlen et al., 190 USPQ 445 (TTAB 1976) [customers of opposer's HILLBILLY bread and rolls are likely to believe that applicant's restaurant, using essentially the same mark, is approved or sponsored by, or is affiliated with opposer; the likelihood of confusion is aggravated by applicant's sales of bread which is precisely opposer's product].

With respect to the marks, although they must be considered in their entireties, it is nevertheless the case that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a

mark, provided [that] the ultimate conclusion rests on consideration of the marks in their entireties."  In re National Data Corp., 753 F.3d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).  For example, "that a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark...."  Id. at 751.

Here, in the case of applicant's mark AZTECA MEXICAN RESTAURANT, the disclaimed words "MEXICAN RESTAURANT" clearly are generic for the type of services offered by applicant.  On applicant's menus, which are the specimens of record, the words appear on a line below the term AZTECA and are in smaller type than the term AZTECA.  Certainly, when applicant's mark is viewed as a whole, it is the term AZTECA which is the dominating and distinguishing element thereof.  See, e.g., In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531, 1533-34 (Fed. Cir 1997) [dominant portion of the mark THE DELTA CAFÉ and design (CAFE disclaimed) for restaurant services is the word DELTA, *citing* In re National Data Corp., 224 USPQ 751].  Likewise, registrant's logo mark shown in Registration No. 1,792,819 is dominated by the term AZTECA.  Further, the stylization of the letters of the mark shown in Registration Nos.

9

1,445,441 and 1,788,335 does not serve to distinguish the involved marks.

In view of the above, we find that applicant's mark AZTECA MEXICAN RESTAURANT and registrant's AZTECA marks are substantially similar, when considered in their entireties, in sound, appearance and connotation. The marks convey essentially the same commercial impression, that is, an ethnic sounding term suggesting Mexican food. However, we do not think the term AZTECA is so highly suggestive that the scope of protection accorded to registrant's mark for Mexican food items would not extend to the use of AZTECA in connection with restaurants featuring Mexican cuisine.

The two third-party registrations (one now canceled) and three third-party applications (each based on intent to use), all for AZTECA marks, do not persuade us to reach a different result here. The evidence (most especially, the intent-to-use applications) is of little probative value on the question of whether or not the marks at issue here are in conflict. See: Hilson Research Inc. v. Society for Human Resource Management, 27 USPQ2d 1423, 1431 (TTAB 1993). At most, the evidence only tends to confirm the obvious suggestiveness of the term "Azteca," the meaning of which is already established by applicant's translation

10

statement and the dictionary definition of the term
"Aztec."

In deciding this case, we have considered a case
highlighted by applicant in its argument, namely Steve's
Ice Cream v. Steve's Famous Hot Dogs, 3 USPQ2d 1477 (TTAB
1987). Our view, however, is that the prior case is
distinguishable from the present one. Unlike the present
case which involves essentially identical marks, the marks
in *Steve's* were different (the design element in the
applicant's STEVE'S and design mark for hot dog restaurant
services featured anthropomorphic frankfurter characters
which served to distinguish such mark from the registrant's
mark STEVE'S for ice cream). Moreover, in the prior case,
there was no evidence that the applicant made or sold ice
cream, or that any one business made or sold ice cream
under the same mark in connection with which it rendered
restaurant services. That record is to be contrasted with
the one before us here.

Insofar as applicant's reliance on the case of Lloyd's
Food Products, Inc. v. Eli's, Inc., 987 F.2d 766, 25 USPQ2d
2027 (Fed. Cir. 1993) is concerned, the Examining Attorney
is correct in disputing applicant's contention that the
case establishes the proposition that foods and restaurants
are not related. The Examining Attorney stated the

11

following: "*Lloyd's* involved a case of summary judgment. The court held that it was error to treat foods and restaurant services as related because it constituted drawing an inference against the non-moving party. *Lloyd's* does not establish that such a finding is wrong; rather, such a finding is merely inappropriate on a motion for summary judgment." See also: Jaquet-Girard, S.A. v. Girard Perregaux & Cie, S.A., 423 F.2d 1395, 165 USPQ 265 (CCPA 1970) ["prior decisions on different marks under different circumstances are of little value in deciding a specific issue of likelihood of confusion"].

We note applicant's attorney's claim that applicant is unaware of any instances of actual confusion during the approximately twenty years of contemporaneous use of applicant's "nationally recognized and well known" mark and registrant's mark. As a *du Pont* factor, the absence of actual confusion weighs, of course, in applicant's favor. However, while applicant has received some recognition in publications with a national circulation, applicant's chain of restaurants is located in only two states, Washington and Oregon. Registrant appears to be located in Chicago,[7] and it may be the case that, despite the overlapping years

---

[7] The cited registrations indicate that registrant is located in Chicago, Illinois.

12

of use, there has been no meaningful opportunity for actual confusion to occur in the marketplace. Further, given the relatively inexpensive nature of the menu items at applicant's restaurants, and the obviously inexpensive nature of registrant's food products, we wonder if purchasers would even be aware of their confusion, and if they were, whether they would take the trouble to inform either of the trademark owners.

To the extent that the points raised by applicant may cast doubt on our ultimate conclusion on the issue of likelihood of confusion, we resolve that doubt, as we must, in favor of the prior registrant. In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); and In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988).

We conclude that consumers would be likely to mistakenly believe that registrant's Mexican food products sold under the mark AZTECA and applicant's restaurant services rendered under the mark AZTECA MEXICAN RESTAURANT originated with or are somehow associated with or sponsored by the same entity.

Decision:  The refusal to register is affirmed.


E. W. Hanak



T. J. Quinn



C. E. Walters
Administrative Trademark
Judges, Trademark Trial
and Appeal Board