03/30/01

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

Paper No. 12
RLS/hlj

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Comexa Ltda.
_____

Serial No. 75/396,043
_____

Carl S. Clark of Price, Heneveld, Cooper, DeWitt & Litton for Comexa Ltda.

Karen M. Strzyz, Trademark Examining Attorney, Law Office 111 (Craig Taylor, Managing Attorney)
_____

Before Simms, Hanak and Quinn, Administrative Trademark Judges.

Opinion by Simms, Administrative Trademark Judge:

Comexa Ltda. (applicant), a Colombian corporation, has appealed from the final refusal of the Trademark Examining Attorney to register the mark shown below:



for chili sauce and pepper sauce.[1]  The Examining Attorney

has refused registration under Section 2(d) of the Act, 15

USC §1052(d), on the basis of Registration No. 2,056,533,

issued April 29, 1997, covering the mark AMAZON for

restaurant services, issued to Amazon, Inc., a California

corporation.

Applicant and the Examining Attorney have submitted

briefs but no oral hearing was requested.  We affirm.

The Examining Attorney argues that confusion is likely

because of the similarities in the marks and relatedness of

the goods and services.  With respect to the marks, the

Examining Attorney argues that the word portion of

applicant's mark is likely to be used in calling for its

goods, and that one feature of a mark may be given greater

weight in the likelihood-of-confusion analysis.  Concerning

the relatedness of applicant's chili sauce and pepper sauce

to registrant's restaurant services, the Examining Attorney

has submitted copies of 50 registrations where various

entities have registered the same marks for various sauces

on the one hand and restaurant services on the other.  The

---

[1] Application Serial No. 75/396,043, filed November 25, 1997,
based upon allegations of use and use in commerce since June 1,
1995.  In the application, applicant has claimed ownership of
Supplemental Register Reg. No. 2,143,628, for the mark "AMAZON
PEPPER" ("PEPPER" disclaimed) for red pepper sauce, chili
pepper sauce and other pepper products.

Examining Attorney notes that, generally, these third-party registrations are not ones which cover a whole line of food items. The Examining Attorney also argues that restaurants often bottle sauces which are featured at those restaurants. It is the Examining Attorney's position, in view of this record, that consumers are accustomed to seeing such goods as sauces and spices sold under one mark in retail stores as well as the same mark used in connection with their related restaurant establishments. In her brief, the Examining Attorney has cited a number of cases involving both food products and restaurant services where there were findings of likelihood of confusion.

The third-party registrations, 48 of which are use-based, cover both generally well-known marks and those which are perhaps not so widely known, issuing both for restaurant services on the one hand and various sauces on the other. These include such marks as CHI-CHI'S, TACO BELL, BOOKBINDER'S, MEMPHIS BAR-B-Q, RED HOT & BLUE, TODOROFF'S, FOG ISLAND CAFÉ, CAFÉ TERRA COTTA, WATERFRONT ALE HOUSE, BOARDROOM BAR-B-Q, TWIN ANCHORS, KING STREET BLUES, KULETO'S ITALIAN RESTAURANT, THE ITALIAN OVEN, HICKORY BILL'S BAR-B-QUE, THAI KITCHEN, CHINA DRAGON, MARIA'S and others.

Applicant, on the other hand, argues that the "key" parrot design element and the "stylized lettering" of its mark create a different commercial impression from that of the registered mark AMAZON. Pointing to such third-party registrations as AMAZON for soft drinks, AMAZON JUNGLE for ice tea and AMAZON GLACE for frozen confections, it is applicant's position that the third-party registrations show the mark AMAZON is diluted and not a strong one. Applicant argues that there are 136 active registrations and pending applications covering this mark in all classes including those pertaining to the food industry and the restaurant industry. It is applicant's position that its goods and registrant's services are unrelated and travel in different channels of trade, with applicant's goods being sold in grocery and convenience stores. Concerning the third-party registrations, covering both goods similar to applicant's as well as restaurant services, noted by the Examining Attorney, applicant states, brief, 5-6:

> While there may be some very strong marks such as Taco Bell® and Chi Chi's® that the public might associate with both sauces or salsa and restaurant services, in the case of a relatively weak mark such as AMAZON, usage of the mark for both chile sauce or pepper spice and restaurant services would not likely cause confusion because the relevant public would not think that Applicant's chile sauce and pepper spice

4

emanate from, or are associated with
Registrant's restaurant services.

Applicant's attorney also states that applicant's mark has been in use for over five years and that applicant knows of no instances of actual confusion.

With respect to these arguments, the Examining Attorney contends that that there are only five registrations with this word in Class 30 (various food products and sauces) registrations, covering such goods as ice cream, tea and flour, and that there is only one AMAZON registration for restaurant services; that, in any event, the existence of any allegedly confusingly similar mark on the register does not aid an applicant in registering another confusingly similar mark, and that, where there is no evidence concerning the nature and extent of applicant's and registrant's uses and no opportunity to hear from registrant, counsel's statement concerning the lack of actual confusion is entitled to little weight.

Upon careful consideration of this record and arguments of the attorneys, we believe that confusion is likely. First, considering the marks, while applicant's mark obviously differs from the registered mark to the extent that it contains a parrot design, we believe that these marks are identical in sound and very similar in

appearance and in commercial impression.  In other words, if the restaurant services and applicant's sauces are otherwise likely to be attributed to the same source, the mere existence of the parrot design in applicant's mark is not likely to be seen, in our view, as indicating that applicant's goods come from a different source.  The AMAZON and parrot design mark is likely to be viewed as a slight variation of registrant's AMAZON registered mark, AMAZON being the most significant origin-indicating feature of applicant's mark.  This is the part of applicant's mark that would be used in asking for applicant's goods.  See In re Appetito Provisions Co. Inc., 3 USPQ2d 1553, 1554 (TTAB 1987).

With respect to the third-party marks which applicant has relied on, some are for obviously different marks.  Also, there is no evidence of the use of these marks in the marketplace, and we do not know therefore if the general public is familiar with them or has come to distinguish the source of these goods.

Concerning the relatedness of applicant's goods and registrant's services, the Board has noted that there is no per se rule that confusion is likely when the same or similar mark is applied to food products on the one hand and to restaurant services on the other.  In re Azteca

Restaurant Enterprises Inc., 50 USPQ2d 1209, 1210 (TTAB 1999). As in that case, we believe that the record herein shows that there is "something more" than simply food versus restaurant services, in the language articulated by our primary reviewing court in Jacobs v. International Multifoods Corp., 668 F.2d 1234, 212 USPQ 641 (CCPA 1982). Here, the numerous third-party registrations submitted by the Examining Attorney have some probative value to the extent that they "serve to suggest that the goods and services listed therein (which are the same types of goods and services involved here) are of a kind which may emanate from a single source." *In re Azteca*, *supra*, at 1211; In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785-86 (TTAB 1993) and In re Mucky Duck Mustard Co. Inc., 6 USPQ2d 1467, 1470, at n.6 (TTAB 1988), aff'd. (unpublished), Appeal No. 88-1444 (Fed. Cir. Nov. 14, 1988). The *Mucky Duck* case is particularly noteworthy for what the Board stated, at 1469:

> Although these goods [mustard] and services [restaurant services] obviously differ, mustard is, as the Examining Attorney has noted, a condiment which is commonly utilized in restaurants by their patrons, especially in such restaurants as delicatessens, fast food houses, steak houses, taverns, inns, and the like, and we think it is common knowledge that restaurants sometimes market their house specialties, including items such as salad dressings, through retail outlets.

As we observed in that case and as the Examining Attorney has argued, of all food products sauces and dressings are perhaps the ones most likely to be marketed by the restaurants in which those items are served.[2]  Thus, the nature of the particular food items here is significant.

We also note that the cited registration is broad enough to include a nationwide chain of restaurants operating under this mark, as well as a single restaurant-—we simply have no information concerning registrant's specific services.  However, we must give the registration of this mark, at the very most only somewhat suggestive of the services, appropriate protection.

While restaurant meals can of course vary greatly in price, such meals can be had inexpensively, and are rendered to the general public.  Applicant's sauces must be presumed to be relatively inexpensive grocery purchases.  This factor, too, weighs in favor of a finding of likelihood of confusion.

---

[2] Applicant here seeks registration of its mark for sauces and the 48 use-based registrations cover sauces of one type or another.  See also In re Golden Griddle Pancake House Ltd., 17 USPQ2d 1074 (TTAB 1990)("restaurants frequently package certain of their products for retail sale").

The dissent notes that in *Mucky Duck,* we noted that certain third-party registrations are entitled to "very little, if any, persuasive value."  However, that comment was directed to the third-party registrations filed under Section 44 of the Act (based on foreign registrations) rather than those based on use

With respect to applicant's ownership of a prior registration on the Supplemental Register (AMAZON PEPPER), we observe that the issue before us is likelihood of confusion with the cited mark. The fact that applicant owns a Supplemental Register registration is not particularly relevant to our determination. See In re Loew's Theatres, Inc., 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985) ("[Applicant's] existing rights arising from its registration of DURANGOS for cigars are unaffected by the ruling with respect to the subject application… The basic flaw in [applicant's] analysis is that each application for registration of a mark for particular goods must be separately evaluated. Nothing in the statute provides a right *ipso facto* to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration. Nor do the PTO rules afford any greater rights…"); and In re Sunmarks Inc., 32 USPQ2d 1470, 1472-73 (TTAB 1994)("The cases are legion holding that each application for registration of a mark for particular goods or services must be separately evaluated… Section 20 of the Trademark Act, 15 USC Section 1070, gives the Board the authority and

---

in commerce. Here, 48 out of the 50 third-party registrations submitted by the Examining Attorney are use-based.

duty to decide an appeal from an adverse final decision of the Examining Attorney. This duty may not be delegated by adoption of conclusions reached by Examining Attorneys on different records. Suffice it to say that each case must be decided on its own merits based on the evidence of record. We obviously are not privy to the record in the files of the registered marks and, in any event, the issuance of a registration(s) by an Examining Attorney cannot control the result of another case.")

Finally, while the dissent fears that there will always be registrations covering both restaurant services on the one hand and an involved food item on the other, leading to the establishment of a per se rule finding likelihood of confusion, we believe that we should not substitute another per se rule (that of finding no likelihood of confusion whenever we have restaurant services against food products, because there will allegedly always be some evidence of relatedness between food products and restaurant services) for a careful evaluation of the quality and quantity of the evidence in each case. Precedent clearly requires us to evaluate the evidence and decide each case on its own merits. Interstate Brands Corp. v. Celestial Seasonings, Inc., 576 F.2d 926, 198 USPQ 151, 152 (CCPA 1978)("…each case must be

decided on the basis of all relevant facts which include the marks and the goods as well as the marketing environment in which a purchaser normally encounters them and the experience generated as a result of their use in the marketplace…").  Applicant is free to rebut a showing of the Examining Attorney with countervailing evidence demonstrating that it is unlikely that the involved food products and restaurant services are commercially related, either by other registrations, a declaration from someone knowledgeable in the trade, or by other means.

Accordingly, we agree with the Examining Attorney that the purchasing public, aware of registrant's AMAZON restaurant services, who then encounter applicant's AMAZON and parrot design chili sauce and pepper sauce in grocery and convenience stores, are likely to believe that these goods and services come from, or are sponsored or licensed by the same source.  If we had any doubt on this issue, that doubt, in accordance with precedence, must be resolved in favor of the registrant and prior user.  In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 223 USPQ 1289, 1290 (Fed. Cir. 1984).

Decision:  The refusal of registration is affirmed.