This Opinion is a
Precedent of the TTAB

Oral Hearing: January 17, 2019 Mailed: November 18, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Country Oven, Inc.*

———

Serial No. 87354443

———

Erik M. Pelton of Erik M. Pelton & Associates PLLC,
     for Country Oven, Inc.

Matt Einstein, Trademark Examining Attorney, Law Office 115,
     Daniel Brody, Managing Attorney.

———

Before Taylor, Lykos and Goodman,
     Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

Country Oven, Inc. ("Applicant") seeks to register on the Principal Register the standard character mark COUNTRY OVEN for services ultimately identified as "Self-serve retail bakery shops; Retail bakery shops; bakery services, namely, online retail bakery shops" in International Class 35 and "Bakery services, namely, the manufacture of bakery products to the order and/or specification of others" in International Class 40.[1]

---

[1] Application Serial No. 87354443, filed March 1, 2017 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging 1998 as the date of first use anywhere and in commerce for

Registration was refused under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's applied-for mark so resembles the registered typed mark[2] COUNTRY OVEN on the Principal Register for "bread buns" in International Class 30,[3] that it is likely to cause confusion or mistake or to deceive.

When the refusal was made final, Applicant filed a notice of appeal and request for reconsideration which was denied. Applicant's appeal of the final refusal is now fully briefed, and an oral hearing was held on January 17, 2019. For the reasons explained below, we affirm the refusal to register as to both classes.

## I. Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative evidence of record bearing on a likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*du Pont*"); *see also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We must consider each relevant *du Pont* factor for which there is evidence and argument. *See, e.g., In re Guild Mortg. Co.,* 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019). When analyzing these factors, the overriding concern is not only to prevent buyer confusion as to the source of the goods, but also to protect the

---

both classes. Applicant claims ownership of prior Registration Nos. 4398434, 5174016 and 5411247.

[2] "Prior to November 2, 2003, 'standard character' drawings were known as 'typed' drawings. … A typed mark is the legal equivalent of a standard character mark." *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1258 n. 2 (Fed. Cir. 2010); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 807.03(i) (Oct. 2018).

[3] Registration No. 0769664, registered May 12, 1964; renewed.

registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993).

"[E]ach case must be decided on its own facts and the differences are often subtle ones." *Indus. Nucleonics Corp. v. Hinde*, 475 F.2d 1197, 177 USPQ 386, 387 (CCPA 1973) (internal citations removed). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods and services. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). These factors, and the other relevant *du Pont* factors, are discussed below.

A. The Similarity or Dissimilarity of the Marks

Commencing with the first *du Pont* factor, it is undisputed that Applicant's and Registrant's standard character and equivalent typed marks are identical in appearance, sound, connotation, and commercial impression.[4] *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (the first *du Pont* likelihood of confusion factor involves an analysis of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression). There is no evidence that consumers would perceive COUNTRY OVEN to engender a different meaning or commercial impression in the context of the services listed in the application than

---

[4] Indeed, while not expressly conceding the identity of the marks, Applicant presents no arguments regarding this factor in its brief.

in the context of bread buns. For both the goods and the services, it evokes the nature and style of how the products are baked. This first *du Pont* factor therefore weighs heavily in favor of finding a likelihood of confusion.

### B. The Goods and Services

Next, we compare the goods and services as they are identified in the involved application and cited registration, the second *du Pont* factor. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018); *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014); *Octocom Sys., Inc. v. Hous. Computs. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) and *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002). Where the identification of services is broad, the Board "presume[s] that the services encompass all services of the type identified." *Southwestern Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). The goods and services need not be identical or even competitive to find a likelihood of confusion. *On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)). Evidence of relatedness may include news articles or evidence from computer

databases showing that the relevant goods and services are used together or used by the same purchasers; advertisements showing that the relevant goods and services are advertised together or sold by the same manufacturer or dealer; or copies of use-based registrations of the same mark for both the applicant's services and the goods listed in the cited registration. *See, e.g.*, *In re Davia*, 110 USPQ2d 1810, 1817 (TTAB 2014) (finding pepper sauce and agave related where evidence showed both were used for the same purpose in the same recipes and thus consumers were likely to purchase the products at the same time and in the same stores). Where identical marks are involved, as is the case here, the degree of similarity between the goods and services that is required to support a finding of likelihood of confusion declines. *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015) (citing *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993)), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017).

We begin with the identifications of goods and services in the registration and application under consideration. Applicant's identified services include "retail bakery shops" and "bakery services, namely, the manufacture of bakery products to the order and specification of others." It is a matter of common knowledge that retail bakery shops sell bakery products. The identification of services contains no restrictions on the kinds of bakery products sold at the retail bakery shops or manufactured to the order and specification of others. "It is well established that the Board may not read limitations into an unrestricted registration or application." *i.am.symbolic*, 123 USPQ2d at 1748. Thus, we must consider Applicant's services to encompass a broad

spectrum of bakery products that quite obviously includes goods of the type identified in the cited registration, i.e., "bread buns." *Cf. In re Hughes Furniture Indus., Inc.*, 114 USPQ2d 1134, 1137 (TTAB 2015) ("Applicant's broadly worded identification of 'furniture' necessarily encompasses Registrant's narrowly identified 'residential and commercial furniture.'"); *see also In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988) (finding that "applicant's 'general merchandise store services' would include the sale of furniture," the goods in the cited registration); *In re H.J. Seiler Co.*, 289 F.2d 674, 675, 129 USPQ 347, 347-48 (CCPA 1961) (affirming likelihood of confusion when applicant listed catering services and registrant listed smoked and cured meats since "the difference between a service for the catering of food and the actual sale of food is a rather fine legal distinction not likely to be drawn by laymen"). We find that the identifications in the application and registration themselves support finding the goods and services are related.

Our determination is bolstered by the following use-based, third-party registrations introduced by the Examining Attorney showing that the same entity has registered a single mark identifying at least one of the bakery services classified in International Class 35 of Applicant's application ( "Self-serve retail bakery shops; Retail bakery shops; bakery services, namely, online retail bakery shops") or in International Class 40 ("Bakery services, namely, the manufacture of bakery products to the order and/or specification of others"), and also identifying goods that encompass "bread buns," the only goods identified in the cited registration:

> Registration No. 4065830 for the mark OVENLY on the
> Principal Register owned by Ovenly, LLC, for, in part,

"bakery goods" and "buns" in International Class 30 and "retail bakery shops" in International Class 35.[5]

Registration No. 4387166 for the composite mark LA FOURNETTE on the Principal Register owned by La Fournette, LLC, for "bakery goods" in International Class 30 and "retail bakery shops" in International Class 35.[6]

Registration No. 4682570 for the mark MAKE ANY OCCASION A COUNTRY FRENCH SOIRÉE on the Principal Register owned by La Madeleine, Inc., for, in part, "bakery goods, namely, . . . buns" in International Class 30 and "retail bakery shops" in International Class 35.[7]

Registration No. 5154767 for the mark ADDINNELLA BAKED GOODS on the Principal Register owned by Addinnella Baked Goods, for, in part, "bakery goods; "bakery products" in International Class 30 and "online retail bakery shops; retail bakery shops" in International Class 35.[8]

Registration No. 5150324 for the mark SALTY TART on the Principal Register owned by The Salty Tart, LLC, for, in part, "bakery goods, namely, … buns" in International Class 30 and "retail bakery shops; online retail bakery shops" in International Class 35.[9]

Registration No. 5160084 for the mark SYBIL'S on the Principal Register, owned by Sybil's Bakery, Inc., for, in part, "bakery goods," "bakery products," and "retail bakery shops; retail shops featuring baked goods."[10]

Registration No. 5175635 for a design mark on the Principal Register, owned by Easy Tiger LLC, for, in part,

---

[5] *See* May 24, 2017 Office Action, TSDR pp. 3-5. All references to the application record are to the Trademark Status and Document Retrieval ("TSDR") system.

[6] *See* May 24, 2017 Office Action, TSDR pp. 12-14.

[7] *See* May 24, 2017 Office Action, TSDR pp. 15-17.

[8] *See* May 24, 2017 Office Action, TSDR pp. 33-35.

[9] *See* May 24, 2017 Office Action, TSDR pp. 36-38.

[10] *See* May 24, 2017 Office Action, TSDR pp. 39-41.

"bakery goods; bakery products" in International Class 30, and "retail bakery shops" in International Class 35.[11]

Registration No. 5107855 for the mark SIBBY'S CUPCAKERY on the Principal Register owned by Sibby's Cupcakery LLC, for, in part, "bakery products, namely, sweet bakery goods," and "bakery services, namely, manufacturing bakery products to order and/or specifications of others."[12]

Registration No. 5135684 for the mark ANDREA'S PROTEIN CAKERY on the Principal Register owned by Andrea's Protein Cakery Inc., for, in part, "bakery goods; bakery products;" in International Class 30; "online retail bakery shops," in International Class 35 and "bakery services, namely, manufacturing bakery products to order and/or specifications of others" in International Class 40.[13]

Registration No. 5113547 for the mark PASTRY GURU on the Principal Register owned by Pastry Guru Entertainment LLC, for, in part, "bakery goods," in International Class 30 and "bakery services, namely, manufacturing bakery products to order and/or specifications of others" in International Class 40.[14]

As a general proposition, third-party registrations that cover goods and services from both the cited registration and an Applicant's application are relevant to show that the goods and services are of a type that may emanate from a single source under one mark. *See, e.g.*, *Detroit Athletic*, 128 USPQ2d at 1051; *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002); *In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6

---

[11] *See* May 24, 2017 Office Action, TSDR pp. 42-44.

[12] *See* May 24, 2017 Office Action, TSDR pp. 24-26.

[13] *See* May 24, 2017 Office Action, TSDR pp. 27-29.

[14] *See* May 24, 2017 Office Action, TSDR pp. 30-32.

USPQ2d 1467, 1470 n.6 (TTAB 1988). Applicant acknowledges this proposition and that "third-party registrations can play an important role in establishing that particular goods and services are related," but argues that the third-party registrations cited by the Examining Attorney are not probative and are insufficient in number to establish that Applicant's bakery services and bakery shops are related to bread buns.[15] More specifically, Applicant's argues in its reply brief that because "bread buns" are a specific type of product such as a hamburger bun or hot dog bun, they are not covered within the general category of "bakery goods" listed in some of the registrations. Applicant's Reply Brief, p. 1, 13 TTABVUE 5. We disagree. Just as we must consider the full scope of the goods and services as set forth in the application and registration under consideration, we must consider the full scope of the goods and services described in a third-party registration. Because the benefits of registration are commensurate with the scope of the goods specified in the certificate of registration, a registration that describes goods broadly is presumed to encompass all goods or services of the type described. *See Stone Lion,* 110 USPQ2d at 1161. Here, the terms "bakery goods" and "bakery products" in the registrations encompass "bread buns." Similarly, "buns" is broad enough to include all types of buns, including "bread buns."

We also reject Applicant's argument that because some of the registrations cover other goods and services, they are not probative to show that bread buns and bakery services are related. The Examining Attorney provided use-based registrations

---

[15] Applicant's Appeal Brief, 10 TTABVUE 12.

covering both bakery services and bakery goods owned by 14 different entities.[16] The registrations are sufficient in both quality and quantity to provide a reasonable predicate supporting the Examining Attorney's position on relatedness and shift the burden to Applicant to rebut the evidence with competent evidence of its own. *See, e.g., In re Pacer Tech.*, 338 F.3d 1348, 1351, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003). The additional goods covered by those registrations do not diminish their probative value for showing relatedness of the goods and services at issue here. *See, e.g., Hewlett-Packard*, 62 USPQ2d at 1004 (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"). The third-party registrations thus show that bakery services and the legal equivalent of bread buns are types of goods and services that emanate from a common source under the same mark and, thus, are probative evidence that the goods and services are related, bolstering our finding of relatedness.

The Examining Attorney also provided several examples of bakeries that use the same mark in connection with retail bakery shops and bakery products in their retail bakery shops, such as LA BREA BAKERY,[17] PANERA BREAD,[18] BEST BUNS

---

[16] We note that there are 15 registrations in the record; however, two are owned by the same entity (Reg. Nos. 4682570 and 4311973). In addition, 12 of the registrations cover the retail bakery services and bakery goods, while 4 registrations cover the custom bakery services and bakery goods.

[17] November 15, 2017 Office Action, TSDR pp. 2-9.

[18] *Id.* at TSDR pp. 10-16.

BREAD COMPANY,[19] KING'S HAWAIIAN,[20] ROTELLA'S ITALIAN BAKERY,[21] DOGTAG BAKERY,[22] YIA YIA'S BAKERY,[23] GAYLE'S BAKERY & ROSTICCERIA,[24] BALTHAZAR,[25] BOUDIN,[26] and GRAND CENTRAL.[27] We add that Applicant's website shows that it uses the applied-for mark in connection with bakery products.[28] This evidence shows that there are bakeries that use the same mark in connection with retail bakery shops and bakery products that they custom bake or sell in their retail bakery shops. Again this evidence bolsters our finding of relatedness.

Relying on its view that "bakery products" do not encompass bread buns, Applicant argues that more evidence than that bakeries sell bakery products is required to prove the involved goods and services are related. Likening this appeal to *In re Coors Brewing Co.*, 343 F.3d 1340, 68 USPQ2d 1059 (Fed. Cir. 2003) and *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082 (Fed. Cir. 2014), Applicant contends that the Examining Attorney is required to present "something more." Applicant's reliance on *Coors Brewing* and *St. Helena* is misplaced. In *Coors Brewing,*

---

[19] *Id.* at TSDR pp. 18-20.

[20] *Id.* at TSDR pp. 21-23.

[21] *Id.* at TSDR pp. 24-28.

[22] May 25, 2018 Reconsideration Letter, TSDR pp. 4-13,

[23] *Id.* at TSDR pp. 17-18.

[24] *Id.* at TSDR pp. 19-21.

[25] *Id.* at TSDR pp. 22-24.

[26] *Id.* at TSDR pp. 25-26.

[27] *Id.* at TSDR pp. 27-30.

[28] May 25, 2018 Reconsideration Letter, TSDR pp. 34-35.

the U.S. Court of Appeals for the Federal Circuit reversed a Board determination that there was likelihood of confusion between the registered mark BLUE MOON for restaurant services and the applied-for mark BLUE MOON for beer. The Court explained that the fact that some restaurants sell private label beer does not alone imply that consumers will assume that beer served in a restaurant has the same source of origin as the restaurant services. 68 USPQ2d at 1063. In reaching this determination, the Court acknowledged the ruling of its predecessor court in *Jacobs v. Int'l Multifoods Corp.*, 668 F.2d 1234, 212 USPQ 641, 642 (CCPA 1982), which established the principle that the fact that restaurants serve food and beverages is not enough to render food and beverages related to restaurant services for purposes of determining a likelihood of confusion: "[t]o establish likelihood of confusion a party must show something more than that similar or even identical marks are used for food products and for restaurant services." The *St. Helena* Court later clarified that, even though *Jacobs* and *Coors* both concerned comparison of food or beverage products to restaurant services, their holdings were not limited to that context. Rather, "something more" than that the service at issue uses the product at issue may be required in any context where "the relatedness of the goods and services is not evident, well-known or generally recognized." 113 USPQ2d at 1087.

The Federal Circuit's decisions in *Coors* and *St. Helena* actually support a finding that bakery services and bread buns are related and that "something more" is not required to show that they are. In *Coors*, the Court recognized that there could be a "clear" relationship between brewpubs and beer, even without evidence:

> This case would be different … if the registrant's mark had been for a brewpub or for restaurant services and beer. In that case, the goods and services associated with the two marks would clearly be related and the case for a likelihood of confusion therefore much stronger.

*Id.* at 1064. And in *St. Helena*, the Court noted that "[i]n circumstances in which the types of goods and services in question are well-known or otherwise generally recognized as having a common source of origin, the PTO's burden to establish relatedness will be easier to satisfy." 113 USPQ2d at 1087.

Here, because the relationship between baked goods, including bread buns, and bakeries is the opposite of obscure, unknown, or generally unrecognized, the relevant line of case law holds that confusion may be likely to occur from the use of the same or similar marks for goods, on the one hand, and for services involving those goods, on the other. *See, e.g., Detroit Athletic*, 128 USPQ2d at 1052 ("[W]e have held that confusion is likely where one party engages in retail services that sell goods of the type produced by the other party . . . ."); *Hyper Shoppes*, 6 USPQ2d at 1026 (finding that the difference between goods and retail store services featuring those and other goods "to be of little or no legal significance. The respective marks will have their only impact on the purchasing public in the same marketplace."); *H.J. Seiler*, 129 USPQ 347 (CCPA 1961) (holding SEILER's for catering services and SEILER'S for smoked and cured meats likely to cause confusion); *In re United Serv. Distribs., Inc.*, 229 USPQ 237 (TTAB 1986) (holding mark consisting of a design featuring silhouettes of a man and woman used in connection with distributorship services in the field of health and beauty aids and mark consisting of a design featuring silhouettes of a man and woman used in connection with skin cream likely to cause confusion); *In re U.S.*

*Shoe Corp.*, 229 USPQ 707 (TTAB 1985) (holding CAREER IMAGE (stylized) for retail women's clothing store services and CREST CAREER IMAGES (stylized) for uniforms likely to cause confusion).

We of course recognize that there is no per se rule regarding the relatedness of goods and services. But in this case, given the evident relationship between "self-serve retail bakery shops; retail bakery shops; bakery services, namely, online retail bakery shops" and "bakery services, namely, the manufacture of bakery products to the order and/or specification of others" on one hand and "bread buns" on the other, there is no need for "something more." Bakery shops by definition sell bakery goods. There is evidence that third parties have registered and use the same mark to offer the goods of the Registrant and the services of the Applicant. The evidence of record suffices to show that Applicant's services and Registrant's goods are clearly related. As such, the second *du Pont* factor also favors a finding of likelihood of confusion.

C. The Channels of Trade and Classes of Purchasers

Neither the registration nor the application contains any restriction on the channels of trade or classes of purchasers. The registered goods presumptively move in all relevant trade channels, including retail bakery shops, to the same consumers that purchase goods through retail bakeries. *See, e.g.*, *Detroit Athletic Co.*, 128 USPQ2d at 1052 ("the registration does not set forth any restrictions on use and therefore cannot be narrowed by testimony that the applicant's use is, in fact, restricted to a particular class of purchasers") (citation omitted); *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011)

("Because the parties' trade channels and classes of consumers are unrestricted, the third and fourth *DuPont* factors also favor Citigroup."). Indeed, where one party uses its mark on goods that are sold in retail stores that customarily vend those goods, it is clear that the trade channels and customers overlap. *See, e.g., Hyper Shoppes (Ohio)*, 6 USPQ2d at 1026. This presumption is consistent with the evidence discussed in the preceding section, which shows that bread buns are sold through retail bakery stores and shops. These *du Pont* factors also favor a finding of likelihood of confusion.

D.  Any Other Established Fact Probative of the Effect of Use

The thirteenth and final *du Pont* factor pertains to "any other established fact probative of the effect of use." *du Pont*, 177 USPQ at 567. Rarely invoked, this factor "accommodates the need for flexibility in assessing each unique set of facts…." *In re Strategic Partners Inc.*, 102 USPQ2d 1397, 1399 (TTAB 2012). This includes a variety of circumstances, such as the coexistence of an applicant's prior-registered mark with the cited registration. Where an applicant owns a prior registration and the mark is "substantially the same" as in the applied-for application, this can weigh against finding that there is a likelihood of confusion. *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1748 (TTAB 2018) (citing *In re Strategic Partners Inc.*, 102 USPQ2d at 1399), *aff'd mem.*, (Fed. Cir. Sept. 13, 2019)). For example, in *In re Strategic Partners*, no likelihood of confusion was found with the registered mark ANYWEAR BY JOSIE NATORI and design where the applicant's prior registered mark

ANYWEARS was substantially similar to the applied-for mark ANYWEAR for identical goods. According to TMEP Section 1207.01:

> In view of *Strategic Partners*, when determining whether the coexistence of the applicant's prior registration with another party's registration weighs against citing the latter registration in a §2(d) refusal of the applicant's applied-for mark, the examining attorney should consider: (1) whether the applicant's prior registered mark is the same as the applied-for mark or is otherwise not meaningfully different; (2) whether the identifications of goods/services in the application and the applicant's prior registration are identical or identical in relevant part; and (3) the length of time the applicant's prior registration has co-existed with the registration being considered as the basis for the §2(d) refusal. *See id*. at 1400. The duration of coexistence is not dispositive as to whether a §2(d) refusal should issue; instead, this factor should be considered together with all the other relevant du Pont factors. *See id.* at 1400; *cf. In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1748 (TTAB 2018) (finding that applicant's earlier registration of a partially similar mark was a neutral factor in the §2(d) analysis, because the applied-for mark was more similar to the cited registered mark than applicant's previously registered mark), appeal filed, No. 18-2236 (Fed. Cir.); *In re USA Warriors Ice Hockey Program, Inc.*, 122 USPQ2d 1790, 1793 (TTAB 2017) (distinguishing *Strategic Partners* and finding that the 3½-year coexistence of applicant's prior registration and the cited registration was a relevant consideration but did not outweigh the other relevant *du Pont* factors).

Applicant has claimed ownership of the following prior registrations:

- Registration No. 4398434 for the standard character mark COUNTRY OVEN on the Principal Register for "Online retail store services featuring Indian gift items, namely, flowers, fruits, music, gift cards, toys, games, health products, beauty products, body care products, toiletries, books, pens, paper products, computer software and CDs, backpacks, apparel, jewelry, electronics, gadgets, home appliances excluding ovens, furniture, linens, coins, handicrafts, watches and home decor items" in International Class 35, registered on September 10, 2013;

- Registration No. 5174016 for the standard character mark COUNTRY OVEN on the Principal Register for "restaurant services; take-out restaurant services" in International Class 43, registered on April 4, 2017; and

- Registration No. 5411247 for the composite mark displayed below on the Principal Register



for "Online retail store services featuring Indian gift items, namely, flowers, fruits, music, gift cards, toys, games, health products, beauty products, body care products, toiletries, books, pens, paper products, computer software and CDs, backpacks, apparel, jewelry, electronics, gadgets, home appliances excluding ovens, furniture, linens, coins, handicrafts, watches and home decor items" in International Class 35, registered on February 27, 2018.

Applicant, noting that all three prior-registered marks consist of or feature the wording COUNTRY OVEN, contends that if Applicant's prior registered marks were not considered confusingly similar to the cited mark, the refusal should be withdrawn. Applicant emphasizes—somewhat in tension with its argument that bread buns have little relation to bakery services—that one of the prior registrations is for restaurant services which are highly related to Applicant's currently applied-for services consisting of "bakery services" and "self-serve retail bakery shops."

We are not persuaded. Two of Applicant's prior registrations, Registration Nos. 4398434 and 5174016, while for the same mark as the applied-for mark are, as Applicant acknowledges, for different services. The composite mark displayed in

Registration No. 5411247 contains the same literal element, COUNTRY OVEN, albeit in stylized form, but is accompanied by a design element and is for services different from those at issue here. As to length of time of co-existence, two of Applicant's prior registrations, Registration Nos. 5174016 and 5411247, which issued on April 4, 2017, and February 27, 2018, respectively, are less than five years old. As such, both of these registrations may still be challenged in a cancellation proceeding under Section 2(d). *See* Trademark Act §14, 15 U.S.C. § 1064. Registration No. 4398434, Applicant's only prior registration that has been registered for over five years and thus impervious to a challenge under Section 2(d) is, as noted, for different services. *See id.* Hence, we find that the USPTO's issuance of Applicant's prior registrations does not weigh against a finding of likelihood of confusion. Indeed, there is no rule that a prior registration entitles a party to another registration. This *du Pont* factor is highly fact specific and it is under very specific circumstances that this factor may matter. And, in any case, those circumstances do not exist here.

## II. Conclusion

We have carefully considered all of the evidence made of record, as well as all of the arguments related thereto, including any evidence and arguments not specifically discussed in this opinion. As indicated earlier, the identical nature of the marks weighs heavily in favor of a finding a likelihood of confusion. This, coupled with the closely-related nature of the goods and services and the overlapping of the channels of trade and customers, leads us to the conclusion that prospective consumers are likely to confuse the source of the involved goods and services, believing that they

originate from or are associated with or sponsored by the same entity. The existence of Applicant's prior registrations does not factor in our decision, given that none of the services recited in Applicant's prior registrations are identical to or overlap with any of Applicant's applied-for services in the present application.

**Decision**: The Section 2(d) refusal to register Applicant's mark is affirmed as to both classes of services.