## In re COORS BREWING COMPANY.

### No. 03–1050.

United States Court of Appeals,
Federal Circuit.

DECIDED: Sept. 8, 2003.

Sabrina C. Stavish, Sheridan Ross, P.C., of Denver, Colorado, argued for appellant.

With her on the brief was Miriam D. Trudell.

William LaMarca, Associate Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the Patent and Trademark Office. With him on the brief were John M. Whealan, Solicitor, and Cynthia C. Lynch, Associate Solicitor.

Before MAYER, Chief Judge, BRYSON, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

In this trademark case, the Coors Brewing Company seeks to register the words "Blue Moon" and an associated design for a brand of beer. The examining attorney in the Patent and Trademark Office rejected Coors' application on the ground that the mark is likely to be confused with the registered mark "Blue Moon and design" for restaurant services. The Trademark Trial and Appeal Board upheld the examining attorney's rejection based on its findings that the two marks are similar and that restaurant services and beer are related goods and services. We uphold the Board's conclusion that the two marks are similar, but we hold that the Board erred in concluding that restaurant services and beer are related. We therefore reverse the Board's decision and remand for further proceedings.

I

Before filing the application at issue in this case, Coors submitted an application seeking to register the word mark "Blue Moon" for beer. The examining attorney refused registration under section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that the proposed mark was likely to be confused with the mark "Blue Moon and design" for restaurant services, which was registered on May 11, 1993, as Reg. No. 1,770,568 ("the '568 mark"). Coors appealed the examining attorney's rejection to the Trademark Trial and Appeal Board, but the Board affirmed.

Rather than pursuing further review of that ruling, Coors filed a new application in 1998, seeking to register the mark "Blue Moon and design" for use with beer. Coors alleged that it had first used the mark in commerce in February 1997. The specimen of use submitted with the application was a color image of a beer label displaying the mark, which included the words "Blue Moon" and a representation of a full moon rising over a forest scene.

The examining attorney initially refused to register Coors' mark under section 1052(d) on the ground that the proposed mark would be likely to be confused with three registrations, including the '568 mark and two registered marks for wine that contained the words "Blue Moon." In making the refusal final, the examining attorney cited the Board's previous decision refusing to register Coors' application for the word mark "Blue Moon." As to the similarity of the marks, the examining attorney found that Coors' mark was similar to the three registered marks in sound, appearance, and commercial impression. As to the relationship between the goods and services represented by Coors' mark and the '568 mark, the examining attorney found that beer and restaurant services are "closely related." In support of that finding, the examining attorney cited evidence that brewpubs, which brew and serve their own beer, often provide restaurant services, and that some restaurants serve their own private label beer. The examining attorney also cited third-party registrations of marks for brewpub restau-

rants and marks for beer and restaurant services. Based on that evidence, the examining attorney concluded that the use of similar marks in connection with restaurant services and beer would be likely to cause confusion as to the source or sponsorship of the goods or services. As to the relationship between beer and wine, the examining attorney found that both beverages are sold to the same classes of purchasers through the same retail outlets for off-premises consumption and through bars and taverns for over-the-counter consumption.

On appeal, the Board disagreed with the examining attorney's ruling with respect to the two registered "Blue Moon" marks for wine. The Board concluded that even though beer and wine are sometimes sold by the same party under the same mark, the two beverages are not sufficiently related that the contemporaneous use of similar marks on the two products is likely to cause confusion as to source.

With respect to the registered "Blue Moon" mark for restaurant services, however, the Board took a different view. By a divided vote, the Board upheld the examining attorney's refusal to register Coors' mark on the ground that it was likely to cause confusion with the '568 mark. The Board majority first held that Coors' mark and the '568 mark convey a similar commercial impression because both contain the words "Blue Moon" and both contain a moon design. In addition, the Board majority found that beer and restaurant services are related, based on the evidence submitted by the examining attorney showing that (1) a number of brewpubs are also restaurants, (2) some restaurants that are not brewpubs nonetheless sell their own private label beer, and (3) some businesses have obtained registrations for beer

and restaurant services under the same mark. The Board majority concluded that because beer and restaurant services are related, the examining attorney was correct to conclude that consumers were likely to assume that Coors' beer and the restaurant services offered by the '568 registrant emanated from the same source, even though there was no evidence that the '568 registrant brewed or served its own beer.

The dissenting judge concluded that the two marks at issue are significantly different and that beer and restaurant services were not shown to be sufficiently related to give rise to a likelihood of confusion between the two marks. The dissenting judge pointed out that the term "Blue Moon" is a common term and that the applicant had introduced evidence that there are more than 100 restaurants in the United States whose names incorporate that term. In addition, the dissenting judge noted that the mere fact that restaurants sometimes serve beer is not sufficient to establish a relationship between the two, and that nothing else in the record supported the conclusion that the use of the "Blue Moon" mark in connection with beer would be likely to lead consumers to assume that the beer was related to the registrant's "Blue Moon" restaurant. The dissenting judge pointed out that, unlike in other Board cases, there was nothing unique about the use of the term "Blue Moon" in the registered mark, and there was no suggestion that the registrant's restaurant was a brewpub or offered its own private label beer. Given the "extremely tiny number of brewpubs and restaurants that distribute private label beers," the dissenting judge concluded, the relationship between restaurants and beer is not sufficient to lead consumers to assume, without more, that the registrant's

restaurant was the source of the applicant's beer.

## II

 The question whether there is a likelihood of confusion between a registered mark and a mark for which a registration application has been filed is an issue of law based on underlying facts. *On Line Careline, Inc. v. Am. Online, Inc.,* 229 F.3d 1080, 1084 (Fed.Cir.2000). The legal conclusions of the Trademark Trial and Appeal Board are subject to de novo review, while the Board's factual findings must be sustained if they are supported by substantial evidence. *See In re Save Venice N.Y., Inc.,* 259 F.3d 1346, 1351 (Fed.Cir.2001). To decide whether a likelihood of confusion has been shown in a particular case requires us to consider the factors summarized in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361 (CCPA 1973). The two *DuPont* factors at issue in this appeal are (1) the similarity of the marks, and (2) the similarity of the goods and services.

## A

 Evaluating the similarity between a registered mark and an applicant's mark requires examination of the appearance, sound, connotation, and commercial impression of the two marks. *See In re Martin's Famous Pastry Shoppe, Inc.,* 748 F.2d 1565, 1566 (Fed.Cir.1984). Applying those criteria in this case, we conclude that the Board's determination that Coors' mark and the registered '568 mark are similar is supported by substantial evidence.

The two marks are depicted below. The '568 is as follows:

The Coors' mark appears below:

Both marks contain the words "Blue Moon" in all capital letters, and those words are prominent in each mark. The Coors mark contains the disclaimed words "Brewing Co.," but because those words appear at the bottom of the mark in significantly smaller font, it was reasonable for the Board to find that those words do not significantly contribute to distinguishing the two marks.

Although both marks prominently display a full moon in conjunction with the words "Blue Moon," the two moon figures are quite different. The registered mark contains a cartoon-type design of a moon with a face and wearing sunglasses, while the Coors mark features a large circular arc suggestive of a full moon rising over a forest scene. Moreover, the other aspects of the Coors' design are quite different from the design of the '568 mark. The Coors mark features a background consisting of a forest scene and stars, while the features of the '568 mark, other than the words "Blue Moon" and the moon wearing sunglasses, consist of a simple abstract design.

Although we uphold the Board's finding that the two marks are generally similar, principally because they both use the term "Blue Moon," we note that similarity is not a binary factor but is a matter of degree. Because there are significant differences in the design of the two marks, the finding of similarity is a less important factor in establishing a likelihood of confusion than it would be if the two marks had been identical in design or nearly indistinguishable to a casual observer. *See, e.g., Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 877 (Fed.Cir.1992); *In re Opus One, Inc.,* 60 USPQ2d 1812, 1815, 2001 WL 1182924 (TTAB 2001).

B

■ Coors argues that the Board improperly disregarded evidence of third-

party commercial use of the words "Blue Moon" in connection with restaurants, foods, and beverages, and that the Board therefore erred in failing to find that the '568 mark is a weak mark. Coors maintains that such a finding would have undermined the Board's legal conclusion that there is a likelihood of confusion between the two marks. *See Lloyd's Food Prods., Inc. v. Eli's, Inc.,* 987 F.2d 766, 768 (Fed. Cir.1993) (holding that third-party evidence should not be disregarded in evaluating the strength of a mark for purposes of determining the likelihood of confusion).

The Board did not ignore the proffered evidence of third-party marks, but instead concluded that the evidence did not establish that the third-party use was sufficiently widespread to compel the conclusion that the '568 mark is a weak mark. We sustain the Board's factual finding that the '568 mark is not a weak mark. As with the issue of similarity, however, we note that the strength of a mark is not a binary factor, but varies along a spectrum from very strong to very weak. The evidence before the Board showed that the term "Blue Moon" has been used on numerous occasions for restaurant services and has also been used in numerous registered marks for food and beverages. That evidence establishes that, even though the Board permissibly declined to characterize the registered mark as weak, the '568 mark also cannot be regarded as a particularly strong mark that is entitled to broad protection.

## C

■ The pivotal portion of the Board's decision was its conclusion that beer and restaurant services are related and that, as a result, consumers would be likely to assume from the similarity of the two marks

that Coors' beer and the registrant's restaurant services had the same source. In light of the Board's ruling that there is no likelihood of confusion between the registered "Blue Moon" marks for wine and Coors' "Blue Moon and design" mark for beer, it is clear that the Board's decision turned on its conclusion that beer and restaurant services are sufficiently related that the use of a similar mark for each would suggest to consumers that the two had a common source.

The Board acknowledged that, in *Jacobs v. International Multifoods Corp.,* 668 F.2d 1234, 1236 (CCPA 1982), our predecessor court held that the fact that restaurants serve food and beverages is not enough to render food and beverages related to restaurant services for purposes of determining the likelihood of confusion. Instead, as the Board noted, *Jacobs* provides that "[t]o establish likelihood of confusion a party must show *something more* than that similar or even identical marks are used for food products and for restaurant services." *Id.* (emphasis added). The Board therefore properly looked to other evidence to determine whether beer and restaurant services are related for purposes of assessing the likelihood of confusion. First, the Board relied on evidence from several references discussing the practice of some restaurants to offer private label or house brands of beer. Second, the Board cited articles showing that brewpubs, which brew their own beer, often feature restaurant services as well. Finally, the Board reviewed evidence of several third-party registrations showing that a single mark has been registered for beer and restaurant services. Based on that evidence, the Board concluded that beer and restaurant services are related and that consumers encountering a beer displaying a substantially similar mark as

that used for a restaurant would be likely to conclude that the beer and the restaurant services came from the same source.

In light of the requirement that "something more" be shown to establish the relatedness of food and restaurant products for purposes of demonstrating a likelihood of confusion, the Board's finding that beer and restaurant services are related is not supported by substantial evidence. While the evidence produced by the examining attorney shows that some restaurants brew or serve their own private label beer, that evidence does not support the Board's conclusion that consumers are likely to conclude that beer and restaurant services with similar marks emanate from the same source. Coors introduced evidence that there are about 1,450 brewpubs, microbreweries, and regional specialty breweries in the United States, while there are approximately 815,000 restaurants. There was no contrary evidence introduced on those points. That means that even if all brewpubs, microbreweries, and regional specialty breweries featured restaurant services, those establishments would constitute only about 18 one-hundredths of one percent of all restaurants, or fewer than one in 500. While there was evidence that some restaurants sell private label beer, that evidence did not suggest that such restaurants are numerous. And although the Board had before it a few registrations for both restaurant services and beer, the very small number of such dual use registrations does nothing to counter Coors' showing that only a very small percentage of restaurants actually brew their own beer or sell house brands of beer; instead, the small number of such registrations suggests that it is quite uncommon for restaurants and beer to share the same trademark. Thus, the evidence before the Board indicates not that there is a substantial overlap between restaurant services and beer with respect to source, but rather that the degree of overlap between the sources of restaurant services and the sources of beer is *de minimis*. We therefore disagree with the Board's legal conclusion that Coors' beer and the registrant's restaurant services are sufficiently related to support a finding of a likelihood of confusion. *See Elec. Design & Sales v. Elec. Data Sys.*, 954 F.2d 713, 717 (Fed.Cir.1992); *see also Steve's Ice Cream v. Steve's Famous Hot Dogs*, 3 USPQ2d 1477, 1478, 1987 WL 124289 (TTAB 1987). The evidence of overlap between beer and restaurant services is so limited that to uphold the Board's finding of relatedness would effectively overturn the requirement of *Jacobs* that a finding of relatedness between food and restaurant services requires "something more" than the fact that restaurants serve food.

It is not unusual for restaurants to be identified with particular food or beverage items that are produced by the same entity that provides the restaurant services or are sold by the same entity under a private label. Thus, for example, some restaurants sell their own private label ice cream, while others sell their own private label coffee. But that does not mean that any time a brand of ice cream or coffee has a trademark that is similar to the registered trademark of some restaurant, consumers are likely to assume that the coffee or ice cream is associated with that restaurant. The *Jacobs* case stands for the contrary proposition, and in light of the very large number of restaurants in this country and the great variety in the names associated with those restaurants, the potential consequences of adopting such a principle would be to limit dramatically the number of marks that could be used by producers of foods and beverages.

This is not a case like *In re Shell Oil Co.*, 992 F.2d 1204 (Fed.Cir.1993), in which this court upheld the Board's refusal to register a mark for automotive-related services. In that case, the registered mark, for "distributorship services in the field of automotive parts," was strikingly similar to the applicant's mark for "service station oil and lubrication change services." *See id.* at 1206. The Board found—and this court agreed—that virtually all of the registrant's customers would be prospective consumers of the applicant's services and that the close similarity of the marks and the relatedness of the services was likely to cause confusion as to the source or relatedness of the registrant's services. *Id.* at 1207–08. In this case, the two marks at issue are not as similar as the two marks at issue in *Shell Oil;* the word portion of the two marks—the term "Blue Moon"—has been widely used in connection with restaurant services and food products; and the goods and services at issue are not as closely related as the automotive services at issue in *Shell Oil.*

This case would be different, and more like *Shell Oil,* if the registrant's mark had been for a brewpub or for restaurant services and beer. In that case, the goods and services associated with the two marks would clearly be related and the case for a likelihood of confusion therefore much stronger. But the registered mark in this case is simply for restaurant services in general, and the Board's conclusion that restaurant services and beer are related is based on the fact that a tiny percentage of all restaurants also serve as a source of beer, which is a very weak evidentiary basis for a finding of relatedness. By analogy, some department stores sell private label automotive parts. But that factor alone would not be sufficient to establish, based on the analysis in the *Shell Oil* case, that department store services in general are sufficiently related to automotive lubrication services that a mark used in connection with oil change services would be likely to cause confusion in light of a generally similar registered mark used by a department store.

For the reasons stated, we reverse the Board's decision upholding the examining attorney's refusal to register Coors' "Blue Moon and design" mark, and we remand to the Board for further consideration of Coors' application in light of this opinion.

*REVERSED and REMANDED.*