THIS OPINION IS A PRECEDENT
OF THE TTAB

Mailed:
February 22, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Accelerate s.a.l.
_____

Serial No. 77522433
_____

Thomas L. Peterson, Esq., of Brundidge & Stanger PC for Accelerate s.a.l.

Edward Nelson, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).
_____

Before Holtzman, Wellington, and Ritchie, Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

Accelerate s.a.l., applicant, filed an application to register the mark COLOMBIANO COFFEE HOUSE (in standard character form) for services described as "providing food and drink" in International Class 43.[1]  The wording "Coffee House" has been disclaimed.

The examining attorney refused registration of the mark under Section 2(d) of the Trademark Act, 15 U.S.C. §

_____

[1] Application Serial No. 77522433 was filed under Section 1(b) based on an allegation of a bona fide intent to use the mark in commerce.

1052(d), based on a likelihood of confusion with the registered certification mark COLOMBIAN for "coffee" in International Class A.[2]

Registration was also refused pursuant to Section 2(e)(1), 15 U.S.C. § 1052(e)(1), on the ground that the proposed mark COLOMBIANO COFFEE HOUSE is merely descriptive of the recited services.

Applicant has appealed the refusals. Both applicant and the examining attorney have filed briefs.

Of the two statutory refusals, we begin by addressing likelihood of confusion.

## Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the facts in evidence which are relevant to the factors bearing on the issue of whether there is a likelihood of confusion. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 568 (CCPA 1973).

---

[2] Registration No. 1160492, issued on July 7, 1981 to the Republic of Colombia. The registration provides the "certification standards and conditions for Colombian coffee, including soluble coffee ('Certified Product'), authorized and certified by the Republic of Colombia," and goes on to specify the type of beans, region of Colombia, and characteristics of the coffee certified. As described in the registration, the coffee, when processed in accordance with registrant's methods and standards, has the following characteristics: "mild, clean cup, of medium/high acidity and body and full and pronounced aroma."

As noted above, the cited registration is for a certification mark; however, this fact has very little effect on our determination as to whether or not there is a likelihood of confusion.

> The test for determining likelihood of confusion with respect to certification marks is the same as that applied to trademarks, *i.e.*, the *du Pont* analysis. However, because the certification mark owner does not itself use the mark, the question of whether there is a likelihood of confusion is based on a comparison of the mark as applied to the goods or services of the certification mark users. (citations omitted). Other issues relating to the goods and services, including the channels of trade and purchasers therefor, are determined from the standpoint of the users as well.

*Motion Picture Ass'n of America, Inc. v. Respect Sportswear, Inc.*, 83 USPQ2d 1555, 1559 (TTAB 2007).

In any likelihood of confusion case, two key considerations are the similarity or dissimilarity of the goods and services at issue and the similarity or dissimilarity of the respective marks in their entireties. See *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976),

We first consider the marks at issue and, in doing so, we examine the similarities and dissimilarities of the marks in their appearance, sound, meaning, and commercial impression. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005).

3

With respect to applicant's mark, we are able to quickly discern the dominant element is the term COLOMBIANO. It appears first and is followed by the disclaimed and generic wording, COFFEE HOUSE. Thus, for purposes of noting any source-identifying qualities of applicant's proposed mark, consumers will likely focus on the term COLOMBIANO. In terms of appearance and sound, COLOMBIANO is clearly very similar to the cited registered mark, COLOMBIAN. The addition of the letter "O" in applicant's mark does very little to distinguish applicant's mark from the registered mark. *Cf. In re Bayer Aktiengesellschaft*, 488 F.3d 960, 965, 82 USPQ2d 1828, 1832 (Fed. Cir. 2007) (noting, in comparing ASPIRINA to aspirin, that "[a]dding an 'a' to aspirin results in virtually no distinction with respect to the visual impressions of the terms.").

The commercial impression or connotation created by applicant's mark is also very similar to the registered mark due to the dominant element, COLOMBIANO, having the same defined meaning as the registered mark. Specifically, "Colombiano" is a direct Spanish translation of the English term "Colombian" and, likewise, each term may be used as an adjective describing something "of or from [the country of]

4

Colombia."[3]  Thus, to the extent that consumers understand the term COLOMBIANO as the Spanish equivalent of the English term "Colombian," the terms will be perceived as having the same connotation, *i.e.*, denoting something from the country of Colombia.  *Palm Bay Imports*, 73 USPQ2d at 1696 ("Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine genericness, descriptiveness, as well as similarity of connotation in order to ascertain confusing similarity with English word marks….")(Internal citations omitted).  Even for the relevant consumers who are unfamiliar with this direct translation, because of the near visual and aural identity of these particular terms consumers are likely to conclude that COLOMBIANO and COLOMBIAN have similar meanings.

Both applicant's use of the term COLOMBIANO and the registered mark will be understood in the context of coffee.  Applicant's mark must be considered in its entirety and the term COLOMBIANO is immediately followed by COFFEE HOUSE; likewise, the registered mark is for certifying "coffee" from Colombia.  Moreover, the record shows that the country of Colombia is renowned for and one

---

[3] Translation evidence attached to Office Action dated July 17, 2009.

of the world's largest producers of coffee beans. Accordingly, the beverage produced from these beans is referred to as "Colombian coffee."[4] In view of the aforementioned, the commercial impression and connotation of the mark COLOMBIANO COFFEE HOUSE in connection with "providing food and drink" services is that Colombian coffee will be served; likewise, registrant's mark connotes that coffee bearing its certification mark derives from Colombia.

Applicant argues that the COLOMBIANO element in its mark has a non-geographic connotation because it is the result of "the combination of names of two individuals from a love story that dates back to the 1920s."[5] Brief, p. 9. However, there is nothing in the record to suggest that this love story is well-known or even that, if it were, consumers of "providing food and drink" services are likely to associate the term COLOMBIANO with it.

In sum, we conclude that the marks are overall very similar.

---

[4] See evidence attached to Office Action dated July 17, 2009.

[5] The story, as recounted on applicant's website, essentially begins with a woman named "Coco" who owns a coffee house called "Coco's Coffee House." She decides to her honor her grandmother "Lomalita" by combining their names and renaming her coffee house "Coloma's Coffee House." After falling in love with an Italian gentleman "Fabiano," she decides to once again rename the coffee

We turn now to the relatedness, if any, of applicant's "providing food and drink" services to the certified goods "coffee." The services and goods need not be identical to find likelihood of confusion under Section 2(d) of the Trademark Act. Rather, they need only be related in such a way that the circumstances surrounding their marketing would result in relevant consumers mistakenly believing that the goods and services originate from or are associated with the same source. *See On-Line Careline Inc. v. America Online Inc.,* 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re International Tel. & Tel. Corp.,* 197 USPQ 910, 911 (TTAB 1978). Furthermore, we must view the goods and services as they are identified in the registration and application. *Paula Payne Prods. v. Johnson Publ. Co.,* 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods").

Finally, we are cognizant of the "something more" precedent set forth by our primary reviewing court and its predecessor that is applied when determining the relatedness of one party's food provision services, *e.g.,*

---

house "Colombiano Coffee House" to invoke all three characters' names.

restaurant services, and the goods of another party that may be served or sold by restaurants. In such cases, it has long been held that the mere fact that a restaurant may offer certain food items or beverages does not by itself mean that said services and goods are sufficiently related; rather, in order "[t]o establish likelihood of confusion a party must show *something more* than that similar or even identical marks are used for food products and for restaurant services." *Jacobs v. International Multifoods Corp.,* 668 F.2d 1234, 212 USPQ 641, 642 (CCPA 1982) (emphasis added); s*ee also In re Opus One Inc.,* 60 USPQ2d. 1812, 1813 (TTAB 2001) (finding restaurant services related to wine with identical mark and "something more"); *cf. In re Coors Brewing Co.,* 343 F.3d 1340, 68 USPQ2d 1059 (Fed. Cir. 2003) (requiring a showing of "something more" to find likelihood of confusion between beer and restaurant services).

The examining attorney argues that applicant's services and the coffee provided by the users of registrant's certification mark are sufficiently related for purposes of likelihood of confusion because "one could reasonably expect or anticipate that applicant will in fact serve coffee drinks to others." Brief, p. 5. Certainly applicant's broadly worded "providing food and drink" could

encompass a coffee house which is defined as a "restaurant where coffee and other refreshments are served."[6]  This is obviously the most rational conclusion to draw given the inclusion of COFFEE HOUSE in applicant's mark; further, while the application is not based on use in commerce, applicant's own website evidence indicates that it is in the business of rendering coffee house services.[7]  In addition, the examining attorney submitted copies of five third-party registrations for marks covering both restaurant or café services as well as coffee beverages. These registrations are probative to the extent that they suggest that the services of applicant and coffee products are goods and services that may emanate from a common source.  *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785 (TTAB 1993).

Based on the record, we find the requisite "something more" showing has been made and applicant's services, as recited, are sufficiently related to coffee.  Indeed, the

_____

[6] *The American Heritage Dictionary of the English Language* (Fourth Ed. 2009).  Copy of definition entry submitted with Office Action dated July 17, 2009.

[7] Applicant submitted with its brief copies of printouts from its own website (originally attached to its petition to revive the application filed on June 25, 2009).  In these materials, applicant describes the love story involving a coffee house and developing its company from the "business of Colombian Coffee House...into a worldwide franchise…"

circumstances of this proceeding are similar to the scenario anticipated by the Federal Circuit in *In re Coors Brewing Co.* for finding a relationship between restaurant services and beverages. In that decision, the Federal Circuit reversed the Board's decision and found that applicant's beer and the restaurant services in the cited registration were not sufficiently related, but went on to say that "[t]his case would be different...if the registrant's mark had been for a brewpub...In that case, the goods and services associated with the two marks would clearly be related and the case for a likelihood of confusion therefore much stronger." *In re Coors Brewing Co.,* 68 USPQ2d at 1064. By analogy, a coffee house is to coffee as a brewpub is to beer, each establishment specializing in a specific beverage but possibly offering other drinks and food items. The emphasis of a coffee house is on coffee beverages. Accordingly, we find that applicant's services and Colombian coffee are related, and this *du Pont* factor favors a finding of likelihood of confusion.

As to the channels of trade and classes of purchasers, we note that neither applicant's "providing of food and drink" services nor the "coffee" identified in the cited registration and provided by the users of registrant's

certification mark are limited to any particular trade channels or classes of purchasers.  We must therefore deem that applicant's services and the coffee will be offered in all appropriate channels and to all the usual purchasers for such goods and services.  See *In re Davis-Cleaver Produce Co.*, 197 USPQ 248 (TTAB 1977).  Because of the nature of the identified goods and services, this would mean that both are offered to the general public, and that the coffee certified by registrant could be served and sold directly by applicant's coffee house.  For these reasons, the *du Pont* factors involving channels of trade and classes of purchasers favor a finding of likelihood of confusion.

Upon consideration of all the *du Pont* factors on which there is evidence or argument, we find that applicant's use of the mark COLOMBIANO COFFEE HOUSE for "providing of food and drink" is likely to cause confusion with the registered certification mark COLOMBIAN for coffee.  Purchasers familiar with registrant's certification mark COLOMBIAN for coffee, upon encountering applicant's coffee house services offered under the very similar mark COLOMBIANO COFFEE HOUSE, are likely to believe that registrant is authorizing applicant's use of the mark, and assume that applicant's services are therefore licensed by or in some way associated with registrant.

11

Descriptiveness

A term is deemed to be merely descriptive of goods or services, within the meaning of Trademark Act Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978). A term need not immediately convey an idea of each and every specific feature of the applicant's goods or services in order to be considered merely descriptive; it is enough that the term describes one significant attribute, function or property of the goods or services. *In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use; that a term may have other meanings in different contexts is not controlling. *In re Bright-Crest, Ltd.*, 204 USPQ 591 (TTAB 1979). It is settled that "[t]he question is not whether

12

someone presented with only the mark could guess what the goods or services are.  Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them."  *In re Tower Tech Inc.*, 64 USPQ2d 1314 (TTAB 2002); see also *In re Home Builders Ass'n*, 18 USPQ2d 1313 (TTAB 1990); and *In re American Greetings Corp.*, 226 USPQ 365 (TTAB 1985).

The examining attorney argues that COLOMBIANO COFFEE HOUSE is descriptive of the recited services because "it describes the fact that applicant intends to provide food and drink that can and/or will offer drinks or other foods that will have as their origin the country of Colombia (Colombiano)."  Brief, p. 9.  In support, the examining attorney references the translation evidence showing that "Colombiano" is the Spanish equivalent of the English word "Colombian" and the dictionary definition of the term "coffee house."  Ultimately, he concludes that applicant's proposed mark "when viewed and analyzed as to the services identified in the application serves to describe the very character of applicant's establishment and the source or origin of the coffee drinks it will serve to others."  Id., p. 10.

Applicant, in its brief, misconstrues the descriptiveness refusal and incorrectly addresses it as a

"merely geographically descriptive" issue.  Brief, p. 8.

Applicant cites to the TMEP, sets forth a test, and argues

accordingly as if the examining attorney has refused

registration based on the mark being primarily

geographically descriptive of the recited services.  To be

clear, the "merely descriptive" and "primarily

geographically descriptive" refusals are two distinct

possible grounds for refusing registration of a mark and

are based on different subsections of the Trademark Act.

As described above, the "merely descriptive" (or

"descriptiveness") refusal is based on Section 2(e)(1) of

the Act and involves a mark that merely describes a key

feature, ingredient or quality of the application's recited

goods or services.  The "primarily geographically

descriptive" refusal, on the other hand, is based on

Section 2(e)(2) of the Act and involves a mark that

describes the geographic origin of the actual goods or

services recited in the application.  See TMEP Section 1210

and cases cited therein.  The examining attorney could have

conceivably raised this latter ground as an additional or

alternative bar to registration; likewise, a refusal under

Section 2(e)(3) based on the mark being geographically

deceptively misdescriptive of the services would also be

14

plausible.[8]  See, *e.g.*, *In re Consolidated Specialty Restaurants, Inc.*, 71 USPQ2d 1921 (TTAB 2004) (COLORADO STEAKHOUSE and design held geographically deceptively misdescriptive of restaurant services when the steaks being served do not originate from the state of Colorado). Refusals based on these grounds are not necessarily mutually exclusive and the same mark may be found to be merely descriptive (or deceptively misdescriptive) *as well as* primarily geographically descriptive (or geographically deceptively misdescriptive) of the identified goods or services.  See *Grand Canyon West Ranch, LLC v. Hualapai Tribe*, 88 USPQ2d 1501 (2008).

In any event, we find no ambiguity regarding the second ground for refusal before the Board in this *ex parte* appeal.  A review of the prosecution of the application reveals the examining attorney clearly and consistently refused registration of applicant's proposed mark under Section 2(e)(1) and, in doing so, has not asserted that the mark describes the geographic origin of applicant's recited services.  Rather, the examining attorney argues that COLOMBIANO COFFEE HOUSE immediately describes the nature

---

[8] We make no comment on whether a refusal based on any additional grounds would be met with affirmance.  Rather, we only address the ground for refusal before us and note that it is an examining attorney's prerogative to assert any ground(s) for refusal which he or she believes is appropriate.

and a key feature of applicant's services, i.e., applicant will render "coffee house" services and "Colombian" coffee will be served there.

Regardless of any possible confusion on applicant's part concerning the actual ground for refusal, the burden of proof remains with the examining attorney to establish that the mark is merely descriptive of the recited services. Here, we find the examining attorney has met his burden and agree that, in view of the evidence of record, COLOMBIANO COFFEE HOUSE is merely descriptive of the "providing of food and drink" services.

The previously-discussed dictionary definition of record establishes the disclaimed wording COFFEE HOUSE is a generic term for a specific type of restaurant, namely, one that specializes in serving coffee-based drinks. The application's recitation of services encompasses coffee house services.

As to the significance of the term COLOMBIANO, we reference our discussion above in the context of the similarity of the marks, particularly our finding as to the connotation and commercial impression created by applicant's mark. Specifically, we rely on the translation evidence showing that COLOMBIANO is the Spanish equivalent of the English word "Colombian," an adjective used to

16

describe something that comes from the country of Colombia; and the evidence establishing that Colombia is renowned for its coffee beans and coffee made from said beans may be referred to as "Colombian" or "Colombian Coffee." The certification mark registration cited as the basis for the examining attorney's likelihood of confusion refusal also underscores the importance of the terminology and the actual fact that coffee from Colombia is referred to as "Colombian." As described in the registration and corroborated by internet evidence submitted by the examining attorney, Colombian coffee is regarded as possessing certain distinctive qualities and characteristics due to factors associated with that region, including its flavor, aroma and body. Based on the aforementioned evidence, we find that consumers encountering applicant's mark in connection with the recited services will immediately understand the term COLOMBIANO as describing a particular type of coffee that will be served in the coffee house, that is, coffee having certain qualities and characteristics that are associated with authentic Colombian coffee. Ultimately, the entire mark describes the nature and key features of applicant's recited services.

Applicant once again relies on the love story mentioned on its website to argue that COLOMBIANO is not descriptive of its services because it "is not [a] geographic location, but rather the combination of two people's names..." Brief, p. 9. However, for the same reason this argument was unavailing in the likelihood of confusion context, it also has little relevance in overcoming the descriptiveness refusal. That is, there is no evidence to suggest that the average consumer, or anyone other than those reading applicant's website, are familiar with this love story and are likely to associate the term COLOMBIANO therewith.

In sum, we find that the evidence supports the examining attorney's refusal to register applicant's mark on the basis that it is merely descriptive of the recited services.

**Decision:** The examining attorney's refusals to register under Sections 2(d) and 2(e)(1) are affirmed.