NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: HALO LEATHER LIMITED,**
*Appellant*

---

2017-1849

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86530941.

---

Decided: June 13, 2018

---

WILLIAM JOHN SEITER, Seiter Legal Studio, Santa Monica, CA, for appellant.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS L. CASAGRANDE, SARAH E. CRAVEN, CHRISTINA J. HIEBER, THOMAS W. KRAUSE.

---

Before PROST, *Chief Judge,* NEWMAN and REYNA, *Circuit Judges.*

PER CURIAM.

In this trademark case, Halo Leather Limited seeks to register the mark "AQUAPEL" and an associated design for leather or imitation leather home goods, including beds, curtain rails, curtain hooks, curtain rings, mattresses, and tables. The examining attorney in the Patent and Trademark Office rejected Halo's application on the ground that the mark is likely to be confused with a registered mark "AQUAPEL" for home goods including bed blankets, comforters, curtain fabric, curtains of textile, mattress covers and pads, table linen, textile fabrics, and textile place mats. The Trademark Trial and Appeal Board upheld the examining attorney's rejection based on its findings that the two marks are similar in terms of their appearance, sound, connotation, and commercial impression, and that consumers would likely identify goods covered under the marks to emanate from a single source. We affirm.

I

Halo Leather Limited ("Halo") filed the application at issue in 2015, seeking to register the mark "AQUAPEL" with an associated design, shown below.



In its application, Halo describes the mark as "consist[ing] of the term 'AQUAPEL' in stylized letters appearing below a bull[']s skull with horns, all on a background depicting beads of water repelled from a flat surface." J.A. 35. Halo identified the mark for use with the following goods under two categories:

> [International Class 18] Leather and imitations of leather and goods made of these materials and not included in other classes, namely, animal skins, animal hides, trunks and travelling bags; umbrellas; parasols; walking sticks, whips, harnesses and saddlery, suitcases, gym bags and holdalls, wallets and purses, handbags, traveling bag sets; valises, luggage, briefcases, leather key holders, unfitted leather furniture covers; and

> [International Class 20] Furniture; mirrors; beds; chairs; wood bedsteads, benches; non-metal bins; cabinets; chests for toys; chests of drawers; chests, not of metal; coat stands; containers for household use; counters, namely, tables; crates; cupboards; curtain rails; curtain hooks; curtain rings; deckchairs; desks; drafting tables; dressing tables; foot stools; picture frames; magazine racks; shelves and metal and non-metal shelving; mattresses; office furniture; pillows; sideboards; sofas; ottomans; armchairs; statues of wood; statuettes of wood, plaster or plastic; stools; table tops; tables; trestle tables; tea trolleys; work benches; kitchen furniture, namely, kitchen cabinets; cushions; storage racks.

J.A. 35–36.

The examining attorney's search of prior-registered marks revealed that Nanotex, LLC ("Nanotex") already registered the mark "AQUAPEL" in standard character

form (Registration No. 4230659, issued October 23, 2012) for use with the following goods:

> [International Class 24] Bed blankets; Comforters; Curtain fabric; Curtains of textile; Mattress covers; Mattress pads; Shower curtains; Table linen; Textile fabrics for home and commercial interiors; Textile fabrics for the manufacture of clothing; Textile place mats.

J.A. 101–02.

In the initial office action, the examining attorney issued a partial refusal. The examining attorney did not object to the registration for certain Class 18 goods—trunks and travelling bags; umbrellas; parasols; walking sticks, whips, harnesses and saddlery, suitcases, gym bags and holdalls, wallets and purses, handbags, traveling bag sets; valises, luggage, briefcases, leather key holders.[1]  However, the examining attorney refused registration for the rest of Class 18 goods generally related to leather and imitation leather products, including animal skins, animal hides, and unfitted leather furniture covers. The examining attorney also refused registration as to all of the Class 20 goods in Halo's application generally related to home furnishings.

The examining attorney based the rejections primarily on two findings. First, the marks are "confusingly similar" as the word portions of the two marks are identical. Second, the respective goods are related and "consumers are likely to be confused and mistakenly believe that the respective goods emanate from a common source." J.A. 48. The examining attorney cited evidence from retailer websites for home goods and furniture to

---

[1]    These goods are not at issue in this appeal. The Board confirmed that registration for these goods "will proceed to publication in due course." J.A. 13.

show that companies commonly manufacture the relevant goods and market the goods under the same mark. J.A. 47–48; *see id.* at 51–100 (documenting various websites). The examining attorney concluded that Halo's rejected goods and the goods under Nanotex's registration are related for likelihood of confusion purposes, and that consumers are likely to be confused and mistakenly believe that the respective goods emanate from a common source.

Halo responded that its mark is not likely to be confused with Nanotex's mark because the refused goods in its application do not overlap with the goods under Nanotex's mark and are not appreciably related. The examining attorney issued a final action, rejecting Halo's argument and maintaining refusal of Class 20 and the same set of Class 18 goods. In addition to the internet evidence cited in the initial office action, the examining attorney listed additional evidence of third-party trademarks for use with the same or similar goods as those covered by Halo's and Nanotex's marks. J.A. 117; *see id.* 119–60 (documenting various third-party trademark registrations). Halo requested reconsideration from the examining attorney, which the examining attorney denied.[2] Halo appealed to the Trademark Trial and Appeal Board ("Board").

---

[2] In its request for reconsideration, Halo amended its Class 20 application to add, at the end of its list of goods, two qualifying clauses:

> [A]ll of the foregoing featuring leather or imitation leather, and none of the foregoing including or featuring bed blankets, comforters, curtain fabric, curtains of textile, mattress covers, mattress pads, shower curtains, table lin-

On appeal, the Board agreed with the examining at-
torney's findings.  The Board concluded that Halo's mark
is similar to Nanotex's mark in terms of appearance,
sound, connotation, and commercial impression because
they share identical words and because Nanotex's mark is
the only registered mark with the term "AQUAPEL" for
home goods.  The Board also found the goods are similar
because these goods are sometimes registered under a
single mark and are advertised and sold through the
same channels.  As a result, a consumer is likely to con-
clude that the relevant goods emanate from a single
source.

## II

The question of whether there is a likelihood of confu-
sion between a registered mark and a mark for which a
registration application has been filed is an issue of law
based on underlying facts.  *On-Line Careline, Inc. v. Am.
Online, Inc.*, 229 F.3d 1080, 1084 (Fed. Cir. 2000).  The
legal conclusions of the Trademark Trial and Appeal
Board are subject to *de novo* review, while the Board's
factual findings must be sustained if they are supported
by substantial evidence.  *See In re Save Venice N.Y., Inc.*,
259 F.3d 1346, 1351 (Fed. Cir. 2001).  To decide whether a
likelihood of confusion has been shown in a particular
case requires us to consider the factors summarized in *In
re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361
(CCPA 1973).  The two *DuPont* factors at issue in this
appeal are (1) the similarity of the marks, and (2) the
similarity of the goods.

---

en, textile fabrics for home and commercial in-
teriors or textile place mats.

J.A. 221.

A

Evaluating the similarity between a registered mark and an applicant's mark requires examination of the appearance, sound, connotation, and commercial impression of the two marks. *See In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566 (Fed. Cir. 1984). Applying those criteria in this case, we conclude that the Board's determination that Halo's mark and Nanotex's registered mark are confusingly similar is supported by substantial evidence.

Nanotex's mark contains the term "AQUAPEL" in standard character form, while Halo's mark contains the identical term with a design element. Although the marks are to be assessed in their entirety, the word portion of a word and design mark is usually viewed as the dominant element. *See In re Viterra Inc.*, 671 F.3d 1358, 1366–67 (Fed. Cir. 2012). The term "AQUAPEL" appears prominently on Halo's mark, and appears in a similar font and style to Nanotex's registered mark. J.A. 40, 102. Substantial evidence supports the Board's conclusion as to the marks' similarity.

Substantial evidence also supports the Board's finding that Nanotex's registered mark is strong because the term "AQUAPEL" is an arbitrary term without an established meaning when used in connection with the goods at issue. Halo contests this finding and argues that the "AQUAPEL" mark is suggestive—namely, that it suggests that the goods in the cited registration are water-repellant. But even assuming the term "AQUAPEL" could suggest that goods in the registration are water-repellent, as Halo argues, Nanotex's registration is not limited to only water-repellent goods. There is also no indication that Nanotex sells exclusively water-repellent goods under the cited registration.

We conclude that substantial evidence supports the Board's finding that these two marks, assessed in their

entirety, are confusingly similar in terms of appearance, sound, connotation and commercial impression.

B

"[L]ikelihood of confusion can be found if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012) (citation and quotation marks omitted). The Board found that consumers are likely to think that the goods listed in Halo's application under Class 20 and certain goods under Class 18 and Nanotex's goods are so related that they emanate from the same source. Substantial evidence supports this finding.

The Board cited to multiple third-party registrations that cover various goods from both Nanotex's registration and Halo's application to show that they generally belong to the category of home goods. The Board also listed websites of third-party retailers showing the use of a single mark to identify furniture, bedding fabrics, and placemats. Similarly, as to Halo's animal skins and hides, the Board highlighted evidence of retailers selling skins and hides, together with bedding, fabrics, and/or placemats under a single mark. These examples are substantial evidence that consumers are accustomed to seeing the kinds of goods in Nanotex's registration and Halo's application being offered under one mark by a single source. *See Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002) (finding the evidence that "a single company sells the goods and services of both parties, if presented, is relevant to the relatedness analysis").

On appeal, Halo does not contest the accuracy of the Board's evidence, but contends that "something more" is required beyond that the goods are used together. Appel-

lant's Br. 13–14. But this argument mischaracterizes the Board's finding. The Board did not merely find that the goods are used together, but that the evidence shows the goods come from the same sources under one mark. Beds and bedding are offered together. Tables, kitchen furniture, placemats, and table linen are offered together. Curtains are offered together with curtain hooks, rails, and rings. The Board did not err in finding that consumers are accustomed to seeing the applied-for and registered goods originating from the same source. Multiple registrations for marks simultaneously covering the registrant's and applicant's goods confirm this finding. The record demonstrates that beyond that the goods are used together, the goods commonly emanate from a single source.

For the same reason, Halo's amended description of the Class 20 goods in its application to add the "feature leather and imitation leather" language and to exclude all the goods in Nanotex's registration from its application does not change this finding. In finding of likelihood of confusion, there is no requirement that the goods be identical so long as one of the goods in the application is sufficiently related to one of the goods in the registration such that consumers would be likely to think they were offered by the same source. *See, e.g.*, *Hewlett-Packard Co.*, 281 F.3d at 1267 ("Even if the goods and services in question are not identical, the consuming public may perceive them as related enough to cause confusion about the source or origin."). Here, the likelihood of confusion is caused by the high degree of relatedness of the parties' goods, not by their being identical.

This is not a case like *In re Coors Brewing Co.*, 343 F.3d 1340, 1346–47 (Fed. Cir. 2003), in which the court found that the Board's evidence was insufficient to support the finding that two marks sharing the term "BLUE MOON" are related. In *Coors*, one mark was for restaurant services, and the other mark was for beer. *Id.*

Although the court found that the two marks were similar, their applications were different: one was for services and the other for goods. *See id.* (holding that it is not true that "any time a brand of [food or beverage] has a trademark that is similar to the registered trademark of some restaurant, consumers are likely to assume that the [food or beverage] is associated with that restaurant"). Unlike *Coors*, both Halo's application and Nanotex's mark concern similar goods, and substantial evidence supports the Board's finding that a consumer would likely view the goods under Halo's mark and Nanotex's mark emanating from a single source.

## III

For the reasons stated, we affirm the Board's decision.

### AFFIRMED

COSTS

No costs.