NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**IN RE: R.S. LIPMAN BREWING COMPANY, LLC,**
*Appellant*

_____

2023-2131

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88209633.

_____

Decided: April 14, 2025

_____

RUDOLPH A. TELSCHER, JR., Husch Blackwell LLP, St. Louis, MO, argued for appellant. Also represented by JENNIFER E. HOEKEL, DAISY MANNING; TIMOTHY L. CAPRIA, Nashville, TN; AVERY HITCHCOCK, Milwaukee, WI.

WILLIAM LAMARCA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Coke Morgan Stewart. Also represented by ERICA JEUNG DICKEY, CHRISTINA J. HIEBER, FARHEENA YASMEEN RASHEED.

_____

Before REYNA, SCHALL, and HUGHES, *Circuit Judges.*

SCHALL, *Circuit Judge.*

R. S. Lipman Brewing Company, LLC ("Lipman") seeks to register the mark "CHICKEN SCRATCH" for beer. The examining attorney at the United States Patent and Trademark Office rejected Lipman's application on the ground that the mark is likely to be confused with the registered mark "CHICKEN SCRATCH" for restaurant services ("the cited mark"). The Trademark Trial and Appeal Board ("Board") upheld the examining attorney's rejection based on its findings that the cited mark is not weak, that the two marks are identical, and that the examining attorney's evidence established the relatedness of beer and restaurant services. *In re R.S. Lipman Brewing Co., LLC*, Serial No. 88209633, 2023 WL 3580372 (T.T.A.B. May 3, 2023), J.A. 1–25. We *affirm*.

I

The application at issue, application serial no. 88209633 ("the '633 application"), was filed in November of 2018. The '633 application sought to register the proposed mark, a standard character mark "CHICKEN SCRATCH" for "beer," in International Class 32 ("the proposed mark"). J.A. 29–31. In April of 2020, the examining attorney issued a final rejection refusing registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the grounds that the proposed mark was likely to be confused with the cited mark, which was registered on the Principal Register in standard character form for "restaurant services" in International Class 43 (Reg. No. 4,812,467). J.A. 350–55, 368–69.[1]    In    October    of    2020,    Lipman    requested

---

[1]    The examiner's refusal was also based on likelihood of confusion with another standard character mark "CHICKEN SCRATCH" for "Distilled spirits, excluding those sold in restaurants," in International Class 33, Reg. No. 5,747,177 ("the '177 registration"). J.A. 353, 382–83. This basis for the examiner's refusal was later withdrawn, J.A. 660, and is therefore not at issue in this appeal.

reconsideration and also appealed to the Board. J.A. 477–85. In response, the Board suspended the appeal and remanded the case to the examining attorney for reconsideration. J.A. 531–33.

In June of 2021, the examining attorney considered and denied Lipman's request and again made the refusal final. J.A. 657–62. The examining attorney based the refusal on the similarity of the proposed mark and the cited mark, the related nature of beer and restaurant services, and the overlap of the relevant trade channels. J.A. 660–61; J.A. 804–20.

In May of 2023, the Board affirmed the refusal to register. J.A. 1–25. Lipman timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Juice Generation, Inc. v. GS Enters., LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Id.*

Whether there is a likelihood of confusion between a mark for which a registration application has been filed and a registered mark is an issue of law based on underlying facts. *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1370 (Fed. Cir. 2015). Relevant factual findings pertaining to a likelihood of confusion correspond to the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). *See also Jack Wolfskin*, 797 F.3d at 1370. The *DuPont* factors at issue in this appeal are

(1) the similarity of the marks and (2) the similarity of the goods and services.  *See DuPont*, 476 F.2d at 1361.[2]

### III

We begin with the similarity of the marks.  "Evaluating the similarity between a registered mark and an applicant's mark requires examination of the appearance, sound, connotation, and commercial impression of the two marks."  *In re Coors*, 343 F.3d 1340, 1345 (Fed. Cir. 2003).  Lipman challenges two aspects of the Board's analysis of this *DuPont* factor.

### A

First, Lipman argues that "the Board failed to appropriately weigh the evidence when determining that the [c]ited [m]ark is 'not a conceptually weak mark,' and that it should have 'the normal scope of protection afforded a registered mark.'"  Appellant's Br. 40 (quoting J.A. 9).  According to Lipman, the Board should have weighed the evidence in the record relating to (a) the suggestive nature of the cited mark in view of the registrant's restaurant services and (b) the cited mark's coexistence with the '177 registration.  Appellant's Br. 40–46; *see supra* n.1.

Contrary to Lipman's arguments, the Board did consider Lipman's argument that the cited mark was suggestive because the registrant's website indicated it provided "chicken made from scratch."  J.A. 5–8.  The Board also considered Lipman's argument that coexistence of the cited mark with the '177 registration rendered the cited mark conceptually weak.  J.A. 8–9.  Ultimately, however, the Board concluded that "CHICKEN SCRATCH" is not conceptually weak and should be given "the normal scope of

---

2    Lipman does not challenge the Board's findings regarding the third *DuPont* factor, the similarity of trade channels.  Appellant's Reply Br. 11 n.6.

protection afforded a registered mark in view of definitions of "chicken scratch" as meaning "bad handwriting" in dictionaries cited by the Board. J.A. 4–5, 8. The dictionary definitions cited by the Board provide substantial evidence in support of the Board's finding that the cited mark is not conceptually weak.[3] To the extent Lipman disagrees with how the Board weighed the evidence, our court does not review this aspect of the Board's analysis on appeal. *See In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) ("This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings.").

B

Lipman next argues that substantial evidence does not support the Board's finding that the proposed mark and the cited mark impart similar commercial impressions and that this weighs in favor of a finding of likelihood of confusion. As we explained in *Coach Services, Inc. v. Triumph Learning LLC*, "[t]he proper test" to analyze the similarity of marks, "is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression, such that persons who encounter the marks would be likely to assume a connection between the parties." 668 F.3d 1356, 1368–69 (Fed.

---

[3] Although Lipman's brief implies that it was error for the Board to rely upon dictionary definitions the Board provided sua sponte, Lipman does not provide any meaningful argument or cite applicable precedent in support of, and thus has forfeited, this contention. Appellant's Br. 41, 42; Reply Br. 13; *see In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022) (finding the appellant forfeited an argument on appeal "by failing to present anything more than a conclusory, skeletal argument") (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)).

Cir. 2012) (internal citation and quotation marks omitted). Lipman contends that the Board failed to consider the marks' commercial impressions in the context of the registrant's restaurant services and Lipman's beer. Appellant's Br. 47–49. Lipman urges that the cited mark, in view of the registrant's restaurant menu, which "overwhelmingly features" chicken dishes, therefore suggests chicken dishes made from scratch. *Id.* at 51. In contrast, Lipman asserts, the '633 application is accompanied by a specimen showing a "chicken pecking at the ground," thereby "purposefully play[ing] on the ingredients used to brew Lipman's pilsner beer—corn, barley, and grains—all commonly consumed by chickens . . . ." *Id.* at 51–52.

We do not agree with Lipman that the Board's finding that the marks impart similar commercial impressions is not supported by substantial evidence. First and foremost, Lipman does not cite on appeal, nor did it provide to the Board, any evidence showing that the mark CHICKEN SCRATCH for beer brings chicken feed ingredients to the minds of consumers. *See* Appellant's Br. 51–52; J.A. 12. Instead, Lipman provides only attorney argument and a photograph of the '633 application's specimen, which includes a chicken graphic not included in the proposed mark. *In re i.am.symbolic*, 866 F.3d 1315, 1324 (Fed. Cir. 2017) ("To the extent that Symbolic is advocating that we consider another mark . . . that is not part of the applied-for mark in analyzing the similarity of the marks, we decline to do so. The correct inquiry requires comparison of the applied-for mark . . . to the registrants' marks."); *see also Bristol-Myers Co. v. Pharmaco, Inc.*, 291 F.2d 756, 756 (CCPA 1961) ("We are, of course, primarily concerned with the coverage of the competing application and registration rather than with specimen labels which might or might not subsequently vary.") (citation omitted). Second, Lipman's evidence that the cited mark's registrant's restaurant menu "overwhelmingly features" chicken dishes does not establish that CHICKEN SCRATCH in this context brings

chicken dishes made from scratch to the mind of a consumer. Appellant's Br. 51.

Moreover, as the Board noted, even accepting Lipman's arguments, both marks convey some relation to "chicken," and thus have similar, or at least related, commercial impressions. J.A. 13. Lipman does not dispute that the marks are identical in sight, sound, and appearance. Appellant's Br. 46. Substantial evidence thus supports the Board's finding that the first *DuPont* factor regarding the similarity of the marks weighs strongly in favor of a likelihood of confusion.

IV

We turn next to the similarity of the goods and services. As our Court has explained:

> [T]he fact that restaurants serve food and beverages is not enough to render food and beverages related to restaurant services for purpose of determining the likelihood of confusion. Instead . . . to establish likelihood of confusion a party must show *something more* than that similar or even identical marks are used for food products and for restaurant services.

*In re Coors*, 343 F.3d at 1345 (citing *Jacobs v. Int'l Multifoods Corp.*, 668 F.2d 1234, 1236 (CCPA 1982) (internal quotation marks omitted)).

On appeal, Lipman argues the Board failed to properly apply the "something more" standard. That is, Lipman contends that the Board erred because it affirmed the rejection of the proposed mark based on the same evidence that our court found did not satisfy the "something more" standard in *Coors*, a case that also involved beer and restaurants. Appellant's Br. 19–20. Lipman also argues that the Board's finding of "something more" is not supported by substantial evidence.

In *Coors*, the applicant sought to register the words "Blue Moon" and an associated design for beer. 343 F.3d at 1341. The examining attorney rejected the application on the ground that the mark was likely to be confused with the registered mark "Blue Moon and design" for restaurant services, and the Board affirmed the refusal. *Id.* On appeal, our court held that the Board's finding that beer and restaurant services are related was not supported by substantial evidence. *Id.* at 1345–46. While the evidence produced by the examining attorney showed that some restaurants sell private label beer, the applicant had introduced evidence illustrating that only 1,450 out of 815,000 total restaurants in the United States were brewpubs or microbreweries (less than 0.18%). *Id.* at 1346. And while the examining attorney had provided evidence of active registrations identifying both beer and restaurant services, there were only a "very small number" of such dual-use registrations. *Id.* Our court concluded that the evidence before the Board, including the evidence that "a tiny percentage of all restaurants also serve as a source of beer," indicated that "the degree of overlap between the sources of restaurant services and the sources of beer [wa]s *de minimus*." *Id.* at 1347, 1346.

We are not persuaded that the Board failed to properly apply the "something more" standard in this case. Lipman points to similarities in the evidence cited by the examining attorneys in *Coors* and in the '633 application. However, Lipman neglects that the record in the '633 application, unlike the record in *Coors*, does not include any evidence comparing the number of breweries providing restaurant services to the total number of United States restaurants. *See* J.A. 19 (noting that, in contrast to *Coors*, "no such comparative evidence was made of record").[4]

---

[4]    Lipman's evidence indicating that there were 7,480 active small and independent operating U.S. breweries in

Here, the Board had before it 21 active registrations identifying both beer and restaurant services, 18 websites of third party restaurants that serve their own beer under the same mark as their restaurant, and nine articles and a book discussing "brewpubs" as a subclass of breweries that both sell their own beer and render restaurant services. We thus see no legal error in, and determine that substantial evidence supports, the Board's finding that there is "something more" than the fact that identical marks are used for beer and restaurant services in this case.

## CONCLUSION

We have considered Lipman's remaining arguments and find them unpersuasive.[5]  Accordingly, for the foregoing reasons, we *affirm*.

## AFFIRMED

---

2019, J.A. 527, does not provide the comparative or contextual evidence that was found to be significant in *Coors*.  *See* Appellant's Reply Br. 10 (Lipman conceding that it "did not provide current figures regarding the total number of restaurants nationwide").  We decline Lipman's invitation to accept as evidence in this case the number of restaurants in the United States presented by *Coors*.  *See In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001) ("The Board must decide each case on its own merits.").

[5]    For example, having found that the Board's *DuPont* factor one and factor two findings are supported by substantial evidence and having found that the Board did not legally err in its *DuPont* factor two analysis, we need not address Lipman's argument that the Board erred in balancing the *DuPont* factors.  Appellant's Br. 55–56.